18453

Barbara B. THOMASSON, Respondent, v. Mossie HOWARD, Appellant

(146 S. E. (2d) 615)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Appellant,*

*Messrs. Richard J. Foster* and *W. Richard James,* of Greenville, *for Respondent,*

February 3, 1966.

BRAILSFORD, Justice.

This action for personal injuries arose out of a collision between automobiles operated, respectively, by the plaintiff, Barbara B. Thomasson, and the defendant, Mossie Howard. The defendant has appealed from a verdict for plaintiff for actual damages, assigning as error the court's refusal of his

timely motion for a directed verdict. The exceptions raise the alternative grounds of the insufficiency of the evidence to establish actionable negligence by the defendant, and its sufficiency to establish plaintiff's contributory negligence and recklessness as a matter of law.

The collision occurred on December 28, 1963, in the City of Greenville, at the intersection of U. S. 291 By-Pass and Lowndes Hill Road. The By-Pass is a main thoroughfare, approximately 120 feet in width, with three marked lanes for northbound traffic, separated, except at intersections, by a raised concrete median strip from three similar lanes for southbound traffic. Lowndes Hill Road is a secondary roadway or street which crosses the By-Pass from east to west. Stop signs are located on this street at each entrance to the intersection.

Plaintiff, accompanied by her fourteen year old son in a 1961 Rambler Sedan, was travelling south on the By-Pass, occupying the middle lane for southbound traffic. The defendant, driving a 1947 Chevrolet automobile in a westerly direction on Lowndes Hill Road, stopped at the eastern entrance to the intersection. A truck driven by one Bray was stopped at the western entrance where it remained until after the collision. When plaintiff came over a rise in the roadway, on a slight curve, approximately a "block" from the intersection [1], she and the defendant were in view of each other. After observing plaintiff's approach, the defendant entered the intersection in low gear at a slow rate of speed. Without changing gears he crossed the three lanes for northbound traffic and continued across plaintiff's lane of travel. When plaintiff saw the defendant enter the first southbound lane, she slammed on her brakes and bore to the right. After laying down skid marks of some seventy-eight feet, the left front of plaintiff's automobile struck the right rear of defendant's automobile on or near the dividing line between

---

[1] The distances referred to in the record, with the possible exception of skid marks, were all based on estimates by lay witnesses.

the middle lane, in which plaintiff had been driving, and the curb lane.

Section 46-423, Code of 1962, requires a driver on a secondary highway to stop at the entrance to a through highway and to yield the right-of-way "to other vehicles which have entered the intersection from the through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on such through highway shall yield the right-of-way * * *."

The appeal, in essence, is based upon the defendant's conception that plaintiff's automobile had just come into view over the rise in the roadway, a "block" north of the intersection, when the defendant proceeded into it; therefore, plaintiff's automobile did not constitute an immediate hazard, and the defendant, having stopped and yielded at the entrance to the through highway, had the right to proceed, whereupon, it became plaintiff's duty to yield the right-of-way to him. Admittedly, there is evidence, including portions of plaintiff's own testimony, from which these inferences could reasonably be drawn. However, they are not the only reasonable inferences from the testimony. There is direct and circumstantial evidence tending to establish that plaintiff was at some point south of the crest of the rise when defendant entered the intersection. At one point, plaintiff testified that she was "a good little ways" south of the rise when the defendant entered. The truck driver Bray testified that he was parked at the western entrance to the intersection, waiting for plaintiff's car to pass before undertaking to make a right turn onto the By-Pass. He saw the defendant's car stopped at the opposite entrance to the intersection before he observed plaintiff's approach from the north. He was waiting for plaintiff to pass when the defendant drove into the intersection.

The plaintiff testified that as she approached the intersection, she saw the defendant's automobile enter the first lane

of traffic on the opposite side of the By-Pass. She was driving between 30 and 35 miles per hour, and, being uncertain as to what the defendant would do but not expecting him to cross the middle of the thoroughfare, she applied her brakes lightly. When he proceeded into the first southbound lane, she immediately applied her brakes with full force and instinctively swerved to the right. As already stated, her car laid down brake marks for approximately 78 feet to the point of the collision, which was at or near the right edge of the lane in which she was traveling.

The posted speed limit on the By-Pass was 35 miles per hour, and the only testimony on the point was that plaintiff traveled within this limit as she approached the intersection. Yet, even though she reduced her speed on observing the defendant start across the northbound lanes, an emergency situation arose when it became apparent that he was about to cross her travel lane. In the light of these circumstances, the jury could reasonably find that plaintiff was in such proximity to the intersection when the defendant entered it as to make a collision in her lane of travel likely unless one driver yielded the right-of-way. It follows that the evidence was sufficient to sustain the finding, implicit in the verdict, that plaintiff's automobile was approaching so closely on the By-Pass, when defendant undertook to cross it, as to constitute an immediate hazard, requiring him to yield the right-of-way. The evidence required submission of the issues of actionable negligence and of contributory negligence to the jury.

Affirmed.

Moss, Lewis and Bussey, JJ., concur.