**LYNNE CAROL FASHIONS, INC., a Pennsylvania corporation, Appellant,**

v.

**CRANSTON PRINT WORKS CO., Inc.**
**No. 19559.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1971.

Decided Jan. 17, 1972.

Joseph Lurie, Galfand, Berger, Senesky & Lurie, Philadelphia, Pa., for appellant.

Sheldon S. Toll, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellee.

Before BIGGS, ADAMS, and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this case, a purchaser of printed cloth is suing the finisher of the cloth for damages resulting from defects in

the goods, despite the fact that in an arbitration proceeding between the purchaser and the seller of the cloth, the seller was granted an award for the purchase price and the purchaser's counterclaim based on defects in the cloth was "denied in its entirety." We must decide whether the arbitrators' award precludes relitigation in the federal district court of the issue regarding the quality of the cloth.

Plaintiff, Lynne Carol Fashions, Inc. (Lynne Carol), is a Philadelphia producer of ladies' garments. In 1968, Lynne Carol purchased approximately 20,000 yards of material from Soptra Fabrics Corporation (Soptra), a New York converter of cloth. This cloth had been printed and finished by defendant, Cranston Print Works Co. (Cranston), a Rhode Island corporation. The goods were delivered by Soptra to Lynne Carol, but problems then arose when Lynne Carol attempted to sew the cloth to make dresses. Lynne Carol claimed that the difficulties were caused by defects in the material. Soptra asserted that the problems could be alleviated by altering Lynne Carol's incorrect sewing techniques. Eventually, Lynne Carol refused to pay for the goods.

On May 20, 1969, pursuant to the written contracts between them, Soptra sought arbitration of its claim against Lynne Carol for the purchase price. Lynne Carol defended on the ground that the goods were defective, and counterclaimed for loss of profits and other damages. Soptra also raised two other grounds upon which the arbitrators could base an award to Soptra: that Lynne Carol had failed to comply with contractual terms regarding notice to Soptra of defects, and that Lynne Carol was precluded by the terms of the contracts from asserting any claim for goods it had cut or otherwise processed. On February 17, 1970, the arbitrators awarded Soptra $22,063.61, the balance due on the goods delivered plus interest and costs, and denied Lynne Carol's claim "in its entirety." The award was confirmed by the Supreme Court of the State of New York, judgment being entered by default on March 20, 1970.

While the arbitration proceedings were underway, Lynne Carol filed a diversity action in the district court alleging that as a result of the defects caused by Cranston, Lynne Carol was damaged, and that Cranston breached its implied warranties of fitness and merchantability. Cranston first filed its answer, and then moved for summary judgment on a variety of grounds. The district court granted the motion for summary judgment solely on the basis that Lynne Carol was estopped from relitigating the issue as to the quality of the goods.

I

A federal district court in a diversity action must, under the principles of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), apply the substantive law of the state in which it sits. The first question which must be resolved, then, is whether, for the purpose of applying the *Erie* doctrine, the issue of collateral estoppel by an arbitration award is substantive, that is one of substance as distinguished from one of procedure.

Proponents of the theory that collateral estoppel is procedural assert that a state rule of collateral estoppel merely operates to outlaw certain causes of action in the state courts but does not eliminate the underlying rights, as contrasted with res judicata which operates to destroy causes of action by merger or bar. Therefore, so the argument goes, since collateral estoppel controls only *access* to the courts, it is procedural and not substantive, the federal courts are not bound by the state rule in this regard but should be able to adopt their own rules, and the adoption of such rules by the federal courts should be based on policy considerations, convenience, and practicality.

A similar contention that a statute of limitations is procedural only and that therefore the state rule is not binding on the federal courts was considered and

rejected by the Supreme Court in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In *Guaranty Trust,* the narrow question was "whether, when no recovery could be had in a State court because the action is barred by the statute of limitations, a federal court in equity can take cognizance of the suit because there is diversity of citizenship between the parties." *Id.* at 107, 65 S.Ct. at 1469. In deciding whether the state statute of limitations had to be followed by the federal district court, the Supreme Court enunciated the test that a rule of law would be deemed substantive and binding on the federal courts for the purpose of applying *Erie,* if "it significantly affect[s] the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." *Id.* at 109, 65 S.Ct. at 1470. Thus, the approach of deciding these issues in terms of labels was disapproved.[1]

Another instructive case in deciding whether state law of collateral estoppel must be adopted by a federal court is Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), coincidentally involving an arbitration dispute. There, plaintiff's Vermont state court action for breach of contract was removed to a federal district court. Defendant's motion for a stay of the action pending arbitration in New York was denied by the district court, which held that under Vermont law the arbitration provision was revocable prior to the making of an award. In upholding the district court, the Supreme Court noted that the differences between an arbitration proceeding and a trial, and the nature of the review following each,

were such that they substantially affected the cause of action. Therefore, the Supreme Court stated that although "a federal court enforces the state-created rights by rules of procedure which it has acquired by the Federal Government and which are therefore not identical with those of the state courts," *Id.* at 202–203, 76 S.Ct. at 276, an arbitration that could not be compelled in the state courts could not be compelled in the federal court.[2]

In Byrd v. Blue Ridge Elec. Corp., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Supreme Court again considered the question whether state or federal law should be applied in the federal courts. The plaintiff had brought a diversity action for injuries caused by defendant's negligence. Defendant interposed the defense that if plaintiff were an employee as defined in the state workmen's compensation act, plaintiff's sole remedy was as that act provided. State courts had ruled that the question whether a plaintiff was an employee had to be decided by the trial judge alone. The Supreme Court held that the state rule was not so bound up with state-created rights and obligations as to require the federal courts to apply the state rule, that the policy underlying *Guaranty Trust* does not necessarily prevail over the "strong federal policy" favoring jury determinations, and that the federal practice need not yield where there was no strong possibility that the outcome of the action would be affected by a jury determination whether plaintiff was an employee under the act.

■■ In the present case, however, we are in a "gray" area of the law with regard to how closely collateral estoppel is tied to state-created rights. Lynne

---

1. More recently, in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court explained that the test of *Guaranty Trust Co.* was not intended to be a talisman, but rather was to be read in light of the policies of discouragement of forum-shopping and avoidance of inequitable administration of the laws upon which the *Erie* decision was based. *Id.* at 466–69, 85 S.Ct. 1136, 14 L.Ed.2d 8.

2. The case was remanded to the court of appeals to apply the Vermont choice of law rule as to whether New York or Vermont law applied to the arbitration provision of the contract.

Carol's cause of action is based on Pennsylvania law, that allows recovery for breaches of implied warranties even though there is no privity between the purchaser and the remote manufacturer. Kassab v. Central Soya, 432 Pa. 217, 246 A.2d 848 (1968). The defense of collateral estoppel, asserted here by Cranston, is a judge-made doctrine designed to terminate litigation. Unlike a statute of limitations, the doctrine of collateral estoppel is not closely related to the state cause of action; but like a statute of limitations once the conditions precedent to its invocation have been satisfied, parties may rely thereon and guide their conduct accordingly. The Third Circuit has adopted a rather expanded view regarding the application of collateral estoppel, and has, in many situations, dispensed with the requirement of mutuality.[3] Pennsylvania law, on the other hand, favors full litigation except in narrow circumstances.[4] And the Pennsylvania policy is even more pronounced where the first determination was not made by a court. Philadephia v. Stadford Arms, Inc., 1 Pa.Cmwlth. 190, 274 A.2d 277 (1971). It appears, therefore, that even though the limitation is not closely related to the state-created right, the application of either the state or federal doctrine to a given case could be "outcome-determinative," in which event Guaranty Trust Co. would seem to require application of the state rule.

The question whether the federal court shall apply the state law of collateral estoppel is a close one, because of the tension between the "outcome-determinative" test of Guaranty Trust and the relation to the state-created rights test of Byrd. Therefore, prudence indicates that the further analysis suggested by Byrd should also be explored. The first such inquiry is whether "a strong federal policy" exists.

Last term, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court considered whether Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L. Ed. 949 (1936), should be overruled so that, despite lack of mutuality, a defendant could assert collateral estoppel against a plaintiff who already litigated unsuccessfully the validity of his patent. In analyzing the policies underlying preclusion of litigation in order to save judicial time, the Court stated:

"Even accepting respondents' characterization of these figures [as to the extent of patent relitigation] as de minimis, it is clear that abrogation of Triplett will save some judicial time if even a few relatively lengthy patent suits may be fairly disposed of on pleas of estoppel. More fundamentally, while the cases do discuss reduction in dockets as an effect of elimination of the mutuality requirement, they do not purport to hold that predictions about the actual amount of judicial time that will be saved under such a holding control decision of that question. . . . Regardless of the magnitude of the figures, the economic consequences of continued adherence to Triplett are serious and any reduction of litigation in this context is by comparison an incidental matter in considering whether to abrogate the mutuality requirement." 402 U.S. at 348–49, 91 S.Ct. at 1453, 28 L.Ed. 2d 788.

The policy against repetitious litigation was found to be so strong that the case was remanded to allow the defendant to

---

3. E. g., Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Cas. Co., 411 F.2d 88 (3rd Cir. 1969); Bruszewski v. United States, 181 F.2d 419 (3rd Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

4. Seigfried v. Boyd, 237 Pa. 55, 85 A. 72 (1912); accord, Albert v. Lehigh Coal & Nav. Co., 431 Pa. 600, 246 A.2d 840 (1968); Helmig v. Rockwell Mfg. Co., 414 Pa. 518, 201 A.2d 205 (1964).

amend its pleadings to assert this affirmative defense.[5]

In Williams v. Ocean Transport, Inc., 425 F.2d 1183 (3d Cir. 1970), a non-diversity case, we found the federal policy against multiplicitous litigation to be of controlling importance. There, collateral estoppel precluded relitigation of the issue of liability without reference to the law of the forum of the first state lawsuit, where the relationship of the defendant in the first action to the defendant in the second action, that of indemnitor to indemnitee, as well as the subject matter of the second suit, arose out of federal law.

There is another "strong federal policy"—the right to a jury trial as guaranteed by the Seventh Amendment—that militates in favor of applying a federal rule of collateral estoppel rather than a state rule. This is in fact the very policy which the Supreme Court held to be of overriding importance in *Byrd*. If a state rule were to allow foreclosure from litigation of the issue of the quality of the cloth, then, because Lynne Carol was required to arbitrate with Soptra, it could be contended that such a rule would operate to deprive Lynne Carol of its right to have a jury decide the question in its judicial proceeding against Cranston. *See* Rachel v. Hill, 435 F.2d 59, 62–64 (5th Cir. 1970).

The fact that these two policies—to favor collateral estoppel as a means of terminating litigation, but to permit jury trials—are antithetical, or at least appear to be so, is not decisive in determining whether to apply federal law. *Byrd* would indicate that all that is required to resort to federal rather than state law is the existence of one federal policy of paramount importance. It would appear that if two contradictory policies exist, the federal court will have to reconcile them or else apply one and distinguish the other in reaching its ultimate conclusion.

If either consideration constitutes a "strong federal policy" in favor of the application of a federal rule of collateral estoppel, the next inquiry is whether the outcome of this case would be different if the federal rule were to be applied rather than the state rule. For reasons elucidated below, the outcome of this case would be exactly the same, regardless of the applicable rule. Because our analysis of outcome leads to identical results applying either rule, we need not now decide whether the federal or state rule should be followed.

## II

■ Assuming that the federal rule of collateral estoppel is applicable, the lack of mutuality would not bar Cranston from asserting that Lynne Carol was estopped from relitigating the question of the quality of the goods. *See e. g.*, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, *supra*. However, before collateral estoppel may be invoked, we must determine whether the tripartite test adopted by the Supreme Court has been satisfied:

"  . . . Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" 402 U.S. at 323–324, 91 S.Ct. at 1440, 28 L.Ed.2d 788, quoting Bernhard v. Bank of America Nat. Trust & Savings Assn., 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942).

The last two questions can be answered affirmatively in this case. Lynne Carol was a party to the prior adjudication, and the award of the arbitrators is

---

5. The Supreme Court noted that "[m]any federal courts, exercising both federal question and diversity jurisdiction, are in accord unless in a diversity case bound to apply a conflicting state rule requir- ing mutuality." 402 U.S. at 325, 91 S.Ct. at 1441, 28 L.Ed.2d 788 (footnote omitted). The question of application of collateral estoppel in a diversity case was not before the Court.

equivalent to a final judgment on the merits. *Garnett v. Kassover*, 8 App. Div.2d 631, 185 N.Y.S.2d 435 (1959); *Dingman v. Amsink*, 77 Pa. 114, 2 Wkly.Notes Cas. 22 (1874). Accordingly, the decision whether collateral estoppel may be applied will turn on whether the issues in the district court are the same as those before the arbitration committee.

Superficially, it appears that the quality of the goods in question was squarely before the arbitrators. However, close analysis reveals that the precise issue as to the quality of the goods presented to the arbitrators, as framed by Lynne Carol, was whether "the goods sold . . . were not fit for the normal and intended use of such fabric by the purchaser, with the purpose of the use known to the seller." On the other hand, the complaint in the district court alleges that the goods "were manufactured, produced, printed and designed by the defendant" and "were defective when they left the defendant['s] . . . control. . . ."

It seems that Lynne Carol would have to introduce different evidence to prove, in the face of Cranston's denial that it was the "manufacturer," that Cranston "manufactured, produced, printed and designed" material that was defective at the time of manufacture, rather than to show that the goods sold by Soptra "were not fit for the normal and intended use of such fabric." In short, to prove the case against Cranston, plaintiff would have to establish that the defects were caused by Cranston and not Soptra. This issue was not litigated in the arbitration, and therefore, cannot be precluded from this action. *See* James L. Saphier Agency, Inc. v. Green, 293 F.2d 769 (2nd Cir. 1961).

■■ Even if the issues as to the quality of the goods at the time of manufacture or at the time of shipment by the converter could be construed as being identical, preclusion by collateral estoppel still would not be warranted in this case because that question—the quality of the goods—was not necessary to the decision of the arbitrators. The requirement that the issue to be barred must have been necessary to the decision in the first litigation is well entrenched in the law.[6] The sound basis for the principle is that parties should be estopped only on issues they actually deem important, and not on incidental matters. Here, because of the contractual defenses raised by Soptra, it is possible that the arbitrators could have found that the goods *were* defective, but that recovery was not warranted because Lynne Carol had not complied with the contractual terms. However, the arbitrators' decision merely announced the award, but is silent as to the specific grounds relied on. Thus, it is impossible to determine from the arbitration whether the goods were in fact found to be defective. Because the contractual defenses probably could not be raised by Cranston, and because the arbitrators could have found the goods defective, Lynne Carol should not be precluded from establishing that the goods were in fact defective.

There is a third ground for permitting plaintiff to proceed with its proofs. Lynne Carol was obligated by its contracts with Soptra to submit disputes to arbitration. However, no such contract limiting the right to seek relief in a court before a jury was ever signed with Cranston. Had Lynne Carol not been bound to arbitrate with Soptra, it would have been entitled to a jury trial in a suit in federal court against Soptra.

---

6. *See e. g.*, Halpern v. Schwartz, 426 F.2d 102 (2nd Cir. 1970); Neaderland v. C. I. R., 424 F.2d 639 (2nd Cir. 1970); Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 421 F.2d 131, rehearing denied, 427 F.2d 710 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971); J. E. Bernard & Co. v. United States, 324 F. Supp. 496 (Cust.Ct. 1971). For an interesting discussion of what facts are essential to a judgment for this purpose, see The Evergreens v. Nunan, 141 F.2d 927 (2nd Cir. 1944).

The Court of Appeals for the Fifth Circuit, in Rachel v. Hill, 435 F.2d 59 (1970), was presented with a similar issue in an analogous context. There, the defendant in the first trial, an injunctive action by the SEC, was found to have violated the Securities Acts. In a later suit for damages, a plaintiff attempted to estop collaterally the same defendant from denying such violations on the basis of the prior determination. The court held that because a jury trial was unavailable to the defendant in the first action, although it would have been available had a private party then sought money damages, the plaintiff could not deprive defendant of that right in a damage suit by invoking collateral estoppel. In view of the result there reached, it would appear to be anomalous to deny Lynne Carol its right to trial by jury here.

### III

Assuming, however, that this matter is one that should be resolved as if the district court were a Pennsylvania trial court, the same result obtains although a different process of legal reasoning is employed.

It has long been the law that the Full Faith and Credit Clause [7] of the Constitution and the federal statute [8] implementing that clause "have made that which has been adjudicated in one state res judicata to the same extent in every other." Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943); accord, Riley v. New York Trust Co., 315 U.S. 343, 62 S.Ct. 608, 86 L.Ed. 885 (1942). Since the arbitration award involved here, and the judgment entered thereon, were rendered in New York, a Pennsylvania trial court must accord that award the same res judicata effect that New York courts would. And because a federal district court in a diversity case must apply the same principles of res judicata as would the corresponding state trial court, Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947),[9] the federal court is also bound to apply the New York law of res judicata to the facts of this dispute.

According to New York law, an arbitration award is a final adjudication on the merits. Garnett v. Kassover, 8 App.Div.2d 631, 185 N.Y.S.2d 435 (1959). New York courts give arbitration awards the same effect for res judicata purposes as they would give a court decision. Rev Garment Inc. v. Jason Corp., 6 App.Div.2d 401, 178 N.Y.S.2d 368 (1958); Hall v. Sperry Gyroscope Co., 26 Misc.2d 556, 208 N.Y.S.2d 63 (1960); Feinstein v. Carl-Dress Co., 156 N.Y.S.2d 636 (S.Ct.1956). Therefore, the general New York law of res judicata and collateral estoppel is applicable to determine what effect the arbitration award should be given by the district court.

In a leading case, the New York Court of Appeals stated that in determining whether parties may be foreclosed by the doctrine of collateral estoppel, "the test to be applied is that of 'identity of issues.'" Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99–100 (1956). Measuring the facts here against that standard, it is clear that collateral estoppel cannot be invoked to prevent Lynne Carol from litigating against Cranston the issue of the quality of the goods. As pointed out in Part II, supra, the question whether Cranston rather than Softra caused the defectiveness is different from the question whether the goods were defective

---

7. U.S.Const. Art. IV., § 1.

8. 28 U.S.C. § 1738 (1964).

9. Almost twenty years ago, this Court held that when enforcement of an arbitration award rendered in a foreign state is sought, the validity of that award must be determined in accordance with the law of the foreign state. Mazer v. Van-Dye-Way Corp., 126 F.2d 399 (3rd Cir. 1942). More recently, we have held that the law of the foreign state controls the effect to be given a judgment rendered in that state. Clyde v. Hodge, 413 F.2d 48 (3rd Cir. 1970).

when Soptra shipped them to Lynne Carol. Also, the defenses which Cranston will interpose are different from those asserted by Soptra, and to overcome them, Lynne Carol may have to introduce evidence of another nature. Accordingly, it was inappropriate for the district court to grant Cranston's motion for summary judgment on the basis that the arbitration award in favor of Soptra has collaterally estopped Lynne Carol from claiming that Cranston had manufactured defective merchandise.

There is a second approach that also provides a valid ground under state law for not applying collateral estoppel in this case. In the New York courts, as well as in the federal courts, a litigated fact may provide a proper basis for invoking collateral estoppel only where that finding was essential to the judgment in the first action. Hinchey v. Sellers, 7 N.Y.2d 287, 293, 197 N.Y.S.2d 129, 133, 165 N.E.2d 156, 159 (1959).[10] Because the contractual defenses raised by Soptra could have been the basis for the arbitration award whether or not the cloth was defective, and because the arbitrators did not state the facts or law upon which their award was based, it is impossible to determine whether a finding that the goods were not defective was made at all, and even if it were, whether it was essential to the award.[11]

### IV

For the reasons stated above, regardless whether federal or state law is applicable, it was error for the district court to grant summary judgment solely on the ground of collateral estoppel.[12] Accordingly, the judgment of the district court will be reversed, and the cause remanded for further proceedings consistent with this opinion.

---

10. *But see,* 74 Harv.L.Rev. 421, 423 (1960), which urges that a finding of fact be deemed essential to the judgment if the parties and trier of fact recognized it as important, and if its significance to future litigation was reasonably foreseeable.

11. Appellee has argued that Lynne Carol, having initiated this litigation, had a duty to ask the arbitrators for special findings, and not having so asked, cannot rely on any ambiguity in the award to defeat collateral estoppel. However, Cranston has not cited any authority which would indicate either that Lynne Carol had the right to ask for such findings or that failure to do so changes the prevailing rules of collateral estoppel. Bruszewski v. United States, 181 F.2d 419, 421 n. 2 (3rd Cir. 1950) is not to the contrary, as in that case, plaintiff had but one cause of action which he could have asserted either against the tortfeasor primarily liable, the one secondarily liable, or both.

12. Defendant raised several other matters in its motion for summary judgment. Since the district court did not address itself to them, and because the record does not provide the basis for our doing so, we express no opinion regarding them.