Frances Isabell GOEHRING, Administratrix of the Estate of Oliver L. Goehring, Deceased, and Frances Isabell Goehring,

v.

DIAMOND MILLING CO., Inc., a corporation, Appellant,

v.

Frances Isabell GOEHRING, Administratrix of the Estate of Oliver L. Goehring, Deceased, Third-Party Defendant.

No. 71–1454.

United States Court of Appeals,
Third Circuit.

Argued April 18, 1972.
Decided May 26, 1972.

William C. Walker, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellant.

Morris M. Berger, Berger & Kapetan, Pittsburgh, Pa., for appellee, Frances Isabell Goehring, Adm'x and in her own right.

Ira G. Houck, Jr., Brueck, Walker & Brueck, Pittsburgh, Pa., for appellee, Frances Isabell Goehring, Adm'x of the Estate of Oliver L. Goehring.

Before ADAMS, MAX ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this diversity negligence case, the pivotal question is whether a plaintiff in a post-trial proceeding may move to set aside a joint tortfeasors' release after having waited until all the evidence in the trial has been completed before first announcing an intention to attack the release.

On October 21, 1965, the automobile operated by Oliver L. Goehring, in which his wife, Frances, was a passenger, was involved in a head-on collision with a truck driven by an employee of Diamond Milling Company. Mr. Goehring was killed and Mrs. Goehring suffered substantial injuries.

As a result of the accident, Mrs. Goehring had claims against her husband's estate and also against Diamond Milling.

Approximately one year after the accident, on October 20, 1966, Mrs. Goehring executed a joint tortfeasors' release [1] in favor of her husband's estate, in consideration of a $20,000 payment to her by

1. The release reads in full:
    "RELEASE AND SETTLEMENT OF CLAIM
    FOR THE SOLE CONSIDERATION OF Twenty Thousand and 00/100 Dollars ($20,000.00), I/we Frances I Goehring residing at R.D. #2, New Brighton, Pennsylvania do hereby release, acquit and forever discharge Oliver L. Goehring, deceased; and Kenneth L. Householder, administrator of the estate of Oliver L. Goehring from any and all actions, causes of action, claims and demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from an accident which occurred on or about the 21st, day of October 1965, and do hereby agree to indemnify and save harmless the said Oliver L. Goehring, deceased; and Kenneth L. Householder, administrator of the estate of Oliver

L. Goehring from all further claims or demands, cost or expense arising out of the injuries or damage sustained by me. It is further agreed that in the event other parties are responsible to me for damages as a result of this accident, the execution of this agreement shall operate as a satisfaction of my claim against such other parties to the extent of the pro rata share of the parties herein released.
    It is expressly warranted by me/us that no promise or inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation of the person or parties released, or their representatives, concerning the nature and extent of the injuries, damages and/or legal liability therefor; that acceptance of the consideration set forth herein is in full accord and satisfaction of a disputed claim for which liability is expressly denied."

the estate. The next day, Mrs. Goehring filed a three-count diversity tort action against Diamond Milling in the district court.

On her own behalf, Mrs. Goehring sued Diamond Milling for the injuries she received as a result of the accident, and as administratrix of her husband's estate, she sued the company pursuant to both the Pennsylvania Wrongful Death Act, Pa.Stat.Ann., tit. 12 § 1601, and the Survivors Act, Pa.Stat.Ann., tit. 20 § 320.603.

Diamond Milling answered the complaint by denying the negligence of its driver and alleging the sole or contributory negligence of the decedent, Mr. Goehring. In addition, Diamond Milling filed a third-party complaint against the estate of Mr. Goehring alleging that if Diamond Milling's driver were found negligent, Mr. Goehring was also negligent, and the estate should be liable for contribution in the event of a verdict for Mrs. Goehring in her own right against Diamond Milling.

The estate, as third-party defendant,[2] set up as its defenses that Mr. Goehring had not been negligent, and that in the event he were found to be responsible for the accident, the joint tortfeasors' release was an absolute bar to any recovery by Diamond Milling against the estate in the third-party action.

After pre-trial statements were filed by all parties, and a pre-trial conference was concluded, the case proceeded to trial before a jury on June 2, 1970. At the conclusion of the six-day trial, the jury returned its verdict on special interrogatories finding that Diamond Milling had been negligent, that the decedent, Mr. Goehring, had been negligent, that the combined negligence of both as joint tortfeasors caused the accident, that Mrs. Goehring sustained damages of $110,417 as a result of the accident, and that the Goehring Estate should not recover under either the Wrongful Death Act or the Survival Act.

Each party filed a motion for a new trial; all were denied. Diamond Milling then filed a motion to reduce the verdict in favor of Mrs. Goehring to a money judgment, requesting, in essence, that the $110,417 verdict be reduced by half because of the joint tortfeasors' release. With regard to Diamond Milling's motion, the district court held that, because Mrs. Goehring had filed an action in a Pennsylvania state court attacking the validity of the release, the court would not reduce the verdict, but would stay execution of the judgment until "a court of competent jurisdiction" determined the validity of the release.

Diamond Milling has appealed, urging that we order a new trial based on a number of alleged errors by the district court, or that we at least remand the cause so that the district court will mold the judgment consistent with the joint tortfeasors' release.

### I. Alleged Errors at Trial

██ Diamond Milling first asserts that the court erred when it refused to permit it to cross-examine Mrs. Goehring's brother-in-law, Kenneth Householder, concerning statements Mrs. Goehring might have made to him relative to the occurrence of the accident. Although the scope of cross-examination may be given broad latitude in the discretion of the trial judge, the general rule is nonetheless that the questions asked must relate to some area brought out on direct examination. Mr. Householder's direct testimony concerned his stopping at the scene of the accident after it had occurred and his making arrangements for photographs to be taken of the scene. Mr. Householder did not discuss the manner in which the accident happened or any statements that Mrs. Goehring may have made to him in this regard. Thus, the district court did not err in

---

2. The records of the court indicate that the Harleysville Insurance Co., as Oliver Goehring's liability insurance carrier represented his estate as third-party defendant.

sustaining Mrs. Goehring's objection to the question asked on cross-examination.[3]

■■ As its next ground for reversal, Diamond Milling urges that it was entitled to a point for charge that "the testimony of an expert is always to be carefully analyzed and weighted on a low grade in comparison to eye-witness testimony." Because this case is in federal court based on diversity of citizenship, we essentially sit as a Pennsylvania appellate court and must look to Pennsylvania law for the answer to the question of substantive law presented here. E. g., Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Pennsylvania case law makes fairly clear that such a charge in appropriate circumstances is permissible,[4] but we have discovered no case requiring that the charge be given. In addition, after a reading of the charge in its entirety, we hold that the jury was instructed properly on the weight to be given testimonial evidence in general, and that no error was committed in this regard.

We have carefully considered Diamond Milling's remaining allegations of trial error. As to any possible error in the charge concerning the wrongful death action, we hold it was harmless in light of the jury's verdict denying recovery; with regard to interrogation of the jury following its rendering of a verdict, we hold the district court did not abuse its discretion by not inquiring further.

## II. The Joint Tortfeasors' Release

Both Diamond Milling and the third-party defendant, the Goehring estate, vigorously assail the district court's refusal to mold the judgment in accordance with what they now believe to be a valid joint tortfeasors' release. Mrs. Goehring, on the other hand, asserts that because it would not have made sense to attack the validity of the release prior to trial, she must now be given the opportunity to do so in a Pennsylvania court if she so chooses.

As a preliminary matter, we note that the release executed by Mrs. Goehring conforms in all respects to the requirements of the Uniform Contribution Among Tortfeasors Act, Pa.Stat.Ann., tit. 12 § 2082 et seq., and is, at least superficially, a valid instrument. Our next inquiry must be, "If Mrs. Goehring sought to attack the validity of the release, at what point in the proceedings should she have brought its validity into question?"

It is reasonably clear from the record that not until all the testimony was concluded and the case ready to go to the jury did Mrs. Goehring indicate that other proceedings might be instituted in which she would attempt to set aside the release. Neither her complaint, the pre-trial statement, nor any of her five amended pre-trial statements contains any mention at all of the release, and at the pre-trial conference the only reference to the release was made by the judge when he stated, "There may also be a question of law with respect to the release, which I haven't seen, but that can be determined by the trial court." None of the parties responded to this statement, and we might surmise that the judge meant only that if the plaintiff were successful before the jury, the trial judge would be required, as a matter of law, to determine the effect of the release on such a judgment.[5]

The first indication given by the plaintiff that she would attack the release in some way came just prior to the

---

3. As a basis for supporting its position that the question was proper, Diamond Milling asserts that the statements of a party (Mrs. Goehring) are not objectionable as hearsay. While this position is valid, if such testimony from Mr. Householder were desired, Diamond Milling should have called him as its own witness, and then asked the questions.

4. See Commonwealth v. Jordan, 407 Pa. 575, 181 A.2d 310, 315 (1962).

5. In contradistinction to the *effect* of the release, the *validity* of the release would, in general, present a question of fact, e. g., the competence of Mrs. Goehring at the time she executed the release.

charge to the jury when the following colloquy took place:

"MR. WALKER [counsel for Diamond Milling]: Judge Dumbauld, there are two open matters remaining on that one to be resolved by the agreement, the other the Court will have to resolve it. The first is that the joint tortfeasors' release executed by Mrs. Goehring was not formally put into evidence and I suggest that in the molding of the jury verdict the Court will treat it as if it had been, because, technically, it should be put in evidence.

THE COURT: I suppose it can be stipulated that it is in evidence but not for the purpose of going to the jury.

MR. WALKER: And it does not go to the jury, that is right.

MR. BERGER [counsel for Mrs. Goehring]: With the question, however, that we do have the possibility as to the attacking of this later on in further proceedings.

THE COURT: And as to the legal effect of that, why don't ask me anything about that now.

MR. WALKER: What I said is that the Court can later determine the effect of it in molding the verdict. Let's treat it as if it were in evidence so that later none of us can take the technical position that it wasn't put in evidence."

The jury thereafter returned with a verdict of $110,417 which the district court refused to reduce because of the action filed by Mrs. Goehring in August, 1970, in a Pennsylvania state court to attack the validity of the release.

It seems clear that if Pennsylvania law either requires or permits a plaintiff in Mrs. Goehring's position to utilize post-trial proceedings to attack a joint tortfeasors' release without giving any prior notice of an intention to do so, the district court was correct when it refused to mold the verdict. On the other hand, if a challenge to the validity of a joint tortfeasors' release should be brought to the attention of the court and parties prior to trial, then it is equally clear that plaintiff failed to avail herself of this procedure, and should not now be given the opportunity to attack the release.

No cases have been brought to our attention and our research has unearthed none that decide the question whether the validity of a joint tortfeasors' release should be put in issue pre-trial or post-trial.

Because the conclusion we reach on this point is the same if we apply Pennsylvania law or federal, we do not decide the thorny problem whether Erie R. Co. v. Tompkins, *supra*, and its progeny require the application of a federal or a state test. Lynn Carol Fashions, Inc. v. Cranston Print Works Co., Inc., 453 F. 2d 1177 (3d Cir. 1972). The only case we have discovered which is sufficiently similar to give our analysis a starting point was decided on the basis of Pennsylvania law. It should suffice to note that since no analogous federal case was found, our approach and solution to the problem would be identical were we deciding the issue as a matter of federal law.

The rule in Pennsylvania is settled that with regard to a general release, a separate hearing prior to trial is appropriate. In Swanger v. Pyles, 204 Pa.Super. 262, 203 A.2d 488 (1964), a complaint was filed by Mrs. Swanger against Mr. Pyles for damages sustained in an automobile collision. As new matter, the defendant Pyles pleaded a release which Mrs. Swanger had executed in his favor. Mrs. Swanger contested the validity of the release based on fraud in the procurement and the trial judge ordered a bifurcated trial, the first half to determine the validity of the release. At the close of plaintiff's case, the trial court granted defendant's motion for binding instructions and plaintiff appealed. The crux of the Superior Court's affirmance was that because the release was a "terminal issue

of the controversy," the trial court's decision to try the release prior to liability was correct and to be endorsed. 203 A. 2d at 490. The court based its holding on the judicial economy engendered by such a course of action.

The situation in the present case is different from that of *Swanger* in that here the question of liability is a potential "terminal issue" because if a jury were to find Mr. Goehring's behavior non-negligent, the validity of the release would not have to be determined. However, the order of trial is not really the issue here. Rather we must examine the potential prejudice to any of the parties caused by plaintiff's waiting until the case was ready to be sent to the jury on liability before any indication was given that plaintiff did not consider the release to be valid and binding.

■ Examining first the position of Diamond Milling, we can readily perceive that if we permit Mrs. Goehring to contest the release now, the prejudice to Diamond Milling would be monetary and would arise if the release were invalid and Diamond Milling were required to satisfy the entire judgment.[6] In terms of conducting its defense at the trial, however, Diamond Milling would not have been prejudiced at all because it vigorously defended on the ground that Mr. Goehring was solely responsible for the collision.

When we analyze the position of the Goehring estate, the third-party defendant, however, the likelihood of significant prejudice is apparent. The estate relied on the plaintiff's case insofar as negligence was concerned because the estate depended on the release to protect it against any additional liability. Accord-

ingly, the estate put in no defense, based apparently on its belief that the validity of the release was not being contested because the plaintiff had not even mentioned the validity of the release prior to the colloquy reproduced *supra* at 81. We can only speculate, but the speculation appears to be reasonable, that had counsel representing the estate in this action known of Mrs. Goehring's plan to attack the release, he would have actively participated in attempting to prove that Mr. Goehring had in no way been responsible for the accident, for this would have been the only practical way to protect itself from further liability. As it stands now, though, the jury has rendered its verdict that Mr. Goehring was jointly responsible for the collision, and since we today uphold that verdict, the estate is forever bound by it. If we permit an attack on the validity of the release at this time, the estate would be effectively precluded from its day in court.

The remaining party to be considered is Mrs. Goehring. She had an adequate opportunity until the day of trial, almost four years after the complaint was filed, to inform the other parties that they should expect further proceedings if the jury returned with a verdict for her, in her individual capacity. Moreover, it is hardly likely that her attorney would not have been aware of any potential defects in the release prior to trial since his representation of her commenced before she executed the release.[7]

Because of the substantial possibility of prejudice to one of the parties to this litigation if we rule otherwise, we hold that the district court should have molded the verdict in accordance with the joint tortfeasors' release.[8]

---

6. If, for example, the estate did not possess sufficient funds to pay its half of the verdict, Diamond Milling might be asked to satisfy more than its pro rata share to the extent that the estate could not pay.

7. The release was signed by Mrs. Goehring only one day before her complaint was

filed in the district court. At oral argument, the Court was advised that Mrs. Goehring was represented by counsel when she executed the release.

8. Of course, the legal effect of the release and the payment by the estate of $20,000 to Mrs. Goehring remain for the determination of the district court.

Accordingly, the judgment of the district court will be vacated and the cause remanded for proceedings consistent with this opinion.[9]

9. In view of our disposition of the case, we have not considered the question whether the district court should abstain from deciding the validity of the release because of the state court proceeding already initiated.