**WORTHEN BANK & TRUST COM-
PANY, Plaintiff,**

v.

**NATIONAL BankAMERICARD INCOR-
PORATED, Defendants.**

**No. LR-71-C-248.**

United States District Court,
E. D. Arkansas, W. D.

July 19, 1972.

Stephen D. Susman of Fulbright, Crooker & Jaworsky, Houston, Tex., Philip S. Anderson of Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiff.

John T. Williams of Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., John B. Bates, of Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

In paragraphs 4 and 5 of the complaint, Worthen alleged that the action was brought for itself individually and as a representative of a class pursuant to Rule 23, Fed.R.Civ.P.

"4. * * * The class is composed of all banks which are members of NBI or Interbank Card Association (hereinafter 'Interbank') or both of them, and which either themselves or through other banks with which they contract or are affiliated, or which they sponsor, intend to or do own, issue, assist in the issuance of, service, honor, enter into contractual relationships with persons for the issuance of or with merchants to honor, accept for deposit or purchase any instruments arising from the use of two or more national bank credit cards * * *.

"5. The above-described class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims of Worthen as representative of the class are typical of the claims of the class; and Worthen will fairly and adequately protect the interests of the class."

The answer of the defendant filed January 13, 1972, admitted that Worthen purports to bring a class action, but denied that this action is a proper class action, and also denies the allegations contained in paragraph 5 of the complaint, hereinbefore set forth.

Section (c) (1) provides:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

Section (a) provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In 3B Moore's Federal Practice, 2d Ed., § 23.03, p. 23–228, the learned author states:

"For the proper maintenance of a class action, the court must find that all the prerequisites of subdivision (a) are met, and in addition that the suit satisfies the standards of at least one of the three types of class suits enumerated in subdivision (b)."

In § 23.02–2, p. 23–152, it is stated:

"An action, of course, is not maintainable as a class suit merely because it is designated as such in the pleadings; whether it is or is not depends upon the attending facts. Both logic and justice dictate that a party or parties who seek to bring an action on behalf of a class or against a class, or an action by a class against a class, must bring themselves within the requirements of Rule 23."

Subdivision (d) of the Rule provides that the court may make an appropriate order "(4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly".

In Hansberry v. Lee, (1940) 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, the court at page 41, 118 of 61 S.Ct. said:

"The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impractica-ble. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interest of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree." (Citations omitted.)

In Montgomery Ward & Co. v. Langer, (8 Cir. 1948) 168 F.2d 182, the court at page 187 said:

"The class action was an invention of equity (Hansberry v. Lee, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741), mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs. See United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 387–389, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762. By Rule 23 the Supreme Court has extended the use of the class action device to the entire field of federal civil litigation by making it applicable to all civil actions."

Worthen served and submitted a memorandum in support of the maintenance of this case as a class action. NBI did not submit any memorandum, either in support of or in opposition to the maintenance as a class action, but did deny that the action should be maintained as a class action.

During the extensive discovery proceedings engaged in by the parties, it was apparent to the court that the facts developed by said discovery proceedings

would be helpful to the court in determining whether the requisites of subdivision (b), Rule 23, in addition to the requisites of subdivision (a) were sufficiently established to allow the suit to proceed as a class action. Prior to the beginning of the oral argument, the court advised the attorneys that a decision on the question would be made simultaneously with the determination of the motion of Worthen for a partial summary judgment.

According to the record there were as of the date of, or shortly before, the commencement of the action 3,980 banks in the NBI system and 5,492 banks in the Interbank system. There were 250 banks in the NBI system that were Class A members, of which two are Arkansas banks (Worthen, and Simmons National Bank of Pine Bluff, Ark.). There are two card issuing banks in both systems, Worthen and Winchester Bank located in Kentucky. However, Worthen has not issued any cards in the Interbank system because of a stipulation between the parties thereto to defer the issue until the termination of this action.

There are six card issuing Class A banks in NBI that are merchant banks in Interbank. There are 14 merchant banks (Class B) in the NBI system that are card issuing banks (associate banks) in Interbank.

Three banks that are members of Interbank were unable to obtain membership in NBI because of being a card issuing member in Interbank. At least one bank, the Industrial Bank & Trust Company of Kalamazoo, Michigan, was accepted by NBI on condition that it drop its affiliation with Interbank.

Since the adoption of the original rule and the rule as now constituted, there has been a great number of cases filed which in the opinion of the court could have been handled more efficiently under the provisions of the present Rules of Federal Procedure. The results reached by the courts in many of the decisions are convincing that the rule has been abused by use in many cases not within the problems which the drafters had in mind when it was written.

In an Advisory Committee Note, 39 F.R.D. 100, the Committee stated:

" 'The felt necessity for a class action is greatest when the courts are called upon to order or sanction the alteration of the status quo in circumstances such that a large number of persons are in a position to call on a single person to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways.' "

The American College of Trial Lawyers appointed a special committee to consider and report on recommendations for amendments to the present Rule 23. In the foreword of the report, p. II, the

"The initial focus of the Committee's study was to determine whether the amended rule had achieved the major goals set forth by the draftsmen in 1966, and, in particular, whether it had resulted in judicial economy without abandoning traditional, procedural fairness. In that connection the Committee, with the cooperation of the Chief Judge of the United States District Court for the Southern District of New York, undertook a statistical study of all civil dockets in the Southern District of New York from July 1, 1966, to December 1, 1971. After reviewing the 29,673 civil dockets in that period, the Committee concluded that the alarming rise in the number of class actions in the Southern District alone raised a substantial question as to whether judicial chaos, rather than judicial economy, was not the end product of the amended rule. Such a result was viewed by the Committee with particular concern since Chief Justice Burger had recently warned that the judicial system had reached a point of crisis. Substantially contributing to that crisis is the overwhelming expansion of massive class actions which now threatens the effective function-

ing of the District Courts. As one beleaguered trial judge put it:

> " 'Unless prudence and caution are exercised soon by the Bench and Bar, the Class Action device can be transformed from a useful tool to an engine of destruction.' "

Professor Charles Alan Wright, in his discussion of class actions at page 177 of 47 F.R.D. 169, said:

> "Rule 23(b) (1) permits a class action where this is necessary to avoid possible adverse effects on the opponents of the class or on absent members of the class. The party opposing the class would be prejudiced if inconsistent results in individual adjudications establish incompatible standards of conduct to which he must adhere."

On page 178 the author said:

> "Rule 23(b) (2) permits a class action where the party opposing the class has acted or refused to act on grounds generally applicable to the class. It is intended primarily for civil rights cases, though there may well be other kinds of cases that will fall within it.

> "The most complicated and controversial portion of the 1966 revision is Rule 23(b) (3). This authorizes a class action where the only justification for such a procedure is the presence of common questions of law or fact. * * * Before permitting it to be maintained the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The real question involved in the instant case is whether amendment 2.16 of the by-laws of NBI is illegal and a violation per se of Sections 1 and 2 of the Sherman Act. The only parties directly interested in this are NBI and Class A member banks. There are only 250 Class A member banks which might possibly desire to join Interbank and use the Master Charge system. An adjudi-cation by the court that the questioned by-law constitutes and is a violation per se of the antitrust laws would be decisive of the right of NBI to suspend Class A membership in NBI and to require a surrender of the authority to continue to remain as a Class A bank in the NBI merely because the member joined Interbank as a full member.

Because of the nature of the question, the final judgment of the court of last resort would be conclusive of the validity of the by-law and that is all that is sought to be adjudicated except possibly the claims of any Class A member banks that have to date been denied the right to contract with Interbank without surrendering their Class A membership in NBI. The only decision that can be rendered in the action now before the court is whether by-law 2.16 is in conflict with the provisions of the antitrust laws. If the by-law is illegal and contrary to the provisions of the antitrust laws, and a Class A member bank of NBI has been damaged by specific refusal to permit such dual membership, it could, under the liberality of Rule 24, Fed.R.Civ.P., be permitted to intervene and present its claim for damages. See 3B Moore's Federal Practice, 2d Ed., § 23.90, p. 23–1601 et seq.

On Page 4 of the report of the Special Committee of the American College of Trial Lawyers, the following appears:

> "The language of Rule 23 supplies warning of possible difficulty. Its principal features combine to produce a potential for unmanageable litigation. The draftsmen of the rule armed the trial judge with a large measure of discretion to determine whether specific litigation should be permitted to proceed as a class action." (Citing Professor Cohn in an article entitled "The New Federal Rules of Civil Procedure," 54 Geo.L.J. 1204, 1212 (1966)).

The record is replete with documentary evidence, letters, statements, etc., of the officials and various members of the Board of Directors of NBI exchanged during the course of the consideration of

by-law 2.16. It is fair to assume that every Class A member was fully advised not only of the contents of the by-law but of the various reasons expressed for its adoption, and, of course, by the terms of the by-law NBI has the power to restrict and to refuse Class A membership to any full member of Interbank.

In Robert J. Ihrke et ux. v. Northern States Power Company, 459 F.2d 566, (8 Cir., 1972), the court, in considering the maintenance of a class action, said:

"The trial court determined, without stating its reasons, that this action should not be maintained as a class action. With this conclusion we agree.

"The prayer of the complaint (and of the amended complaint) is primarily for a declaratory judgment holding that the rules and regulations of Northern are unconstitutional in that they permit Northern to terminate the utility services of its customers without adequate prior notice and without a fair and impartial hearing. No damages are requested on behalf of the Ihrkes or on behalf of the class. The determination of the constitutional question can be made by the Court and the rules and regulations determined to be constitutional or unconstitutional regardless of whether this action is treated as an individual action or as a class action. No useful purpose would be served by permitting this case to proceed as a class action.

"An additional reason that a class action should not be permitted in this case is that it does not appear that the claims or defenses of the representative parties are typical of the claims or defenses of the class (or subclass) as required by Rule 23, Federal Rules of Civil Procedure."

In view of the facts and the question that is involved in this litigation, and after a consideration of all the circumstances in and surrounding the case, the court is convinced that this action should not be prosecuted as a class action. The affected class is not so numerous that joinder of all members is impracticable. Whether there are questions of law or fact common to the class depends upon the attitude of the particular bank and whether it desires dual membership in Interbank and NBI. Thus, the prerequisites of 23(a) are not met, and, as heretofore stated, this is not a case that comes within the provisions of Rule 23(b), and therefore judgment is being entered dismissing all allegations contained in the complaint relative to the maintenance as a class action, particularly paragraphs 4 and 5 of the complaint.