**STATE OF OHIO, Plaintiff,**

v.

**RICHTER CONCRETE CORPORA-
TION et al., Defendants.**

**No. 8988.**

United States District Court,
S. D. Ohio, W. D.

Feb. 4, 1975.

Order June 11, 1975.

Ronald I. Wiseman, Asst. Atty. Gen., Antitrust Sec., Columbus, Ohio, for plaintiff.

H. Vincent E. Mitchell, Cleveland, Ohio, for Richter Concrete Corp.

Russell F. Speidel, Batavia, Ohio, for Michael Concrete Products, Inc.

Ralph F. Mitchell, Cincinnati, Ohio, for Ric-Con Corp.

Murray S. Monroe, Cincinnati, Ohio, for Hilltop Concrete Corp.

Samuel M. Allen, Cincinnati, Ohio, for Crew Builders Supply Co.

OPINION

DAVID S. PORTER, District Judge.

This is an antitrust case in which plaintiff charges that defendants con-

spired to fix prices of ready-mix concrete. Plaintiff requests that this case be designated as a class action pursuant to Rule 23, Fed.R.Civ.P., and the class action issue assumed the proportion of a major law suit. There was extensive discovery, a full-blown hearing, exhaustive briefs, and oral argument.

The present case follows closely upon the heels of *Bill Minnielli Cement Contracting, Inc. v. Richter Concrete Corp.,* 62 F.R.D. 381, 1973-1 Trade Cases ¶ 74,591, p. 94,613 (S.D.Ohio 1973), and involves substantially the same facts. In *Minnielli* we denied the plaintiffs' motion to certify the cause as a class action, and we think the differences between that case and the present one are not significant enough to require a different result. Thus, we conclude that the instant motion to certify this cause as a class action should be denied.

█ Because the present case is nearly identical to *Minnielli,* we shall not here engage in the same in depth discussion which was accorded that case. Here, as in *Minnielli,* we think the presence of both direct and indirect purchasers within a single class gives rise to individual questions of impact which predominate over any common questions of law or fact. See *Minnielli, supra,* at pp. 386-389, 1973-1 Trade Cases at pp. 94-615-17. The case also encompasses other highly individualized questions, including the issue of fraudulent concealment. *Minnelli, supra,* at 390, 1973-1 Trade Cases at 94,618. Also, see generally, the deposition of Robert Hollister, filed July 12, 1974.

█ In addition to major problems of commonality, we also find (as we did in *Minnielli*) insufficient evidence of numerosity. There is no evidence as to how many of the approximately 185 governmental entities sought to be included in the class actually bought ready-mix, directly or indirectly, from the named defendants. There are a number of other ready-mix companies in the greater Cincinnati area (defendants suggest as many as a dozen—doc. 63, p. 35) from whom proposed class members might have purchased concrete. The only conclusive evidence shows that 37 proposed class members purchased directly from defendants. While class size need not be established with precision, we nevertheless believe it is far too speculative to conclude from the above that all 185 of the proposed class members bought ready-mix, directly or indirectly, from the defendants. And, under the circumstances of this case, we believe that a class of 37 is not so numerous as to make joinder impracticable. There have been cases in which classes that small were certified, but, for the most part, such classes have been more widely dispersed geographically. There have, of course, also been cases wherein proposed classes in excess of 185 have been turned down. See, *e. g., Utah v. American Pipe and Construction Co.,* 49 F.R.D. 17, 21 (E.D.Cal., 1969); *Worthen Bank and Trust Co. v. National BankAmericard, Inc.,* 345 F.Supp. 1323 (E.D.Ark., 1972).

Finally, we think that as a practical matter the State of Ohio has sufficient resources and sufficient public service incentive (not to mention economic incentive) to pursue its own individual action herein. And, in this regard, we note again (as in *Minnielli*) that if the State were to prevail on the issue of a price-fixing conspiracy, it would seem to inure to the benefit of other ready-mix buyers under the doctrine of collateral estoppel. See *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,* 453 F.2d 1177 (3 Cir., 1972); *Rachal v. Hill,* 435 F.2d 59, 61-62 (5 Cir., 1970), cert. den., 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971).

For the foregoing reasons, we decline at this time to certify the present case as a class action. We recognize that the attorneys for the State are of the firm belief that this is not such an involved or complicated case as to bar class action certification on grounds of commonality or manageability. After

full consideration of both the present case and *Minnielli*, however, we cannot now share their view. Nevertheless, our present denial of plaintiff's motion is without prejudice to possible reconsideration of this question should it appear, in the course of subsequent litigation involving the alleged price-fixing, that particular issues are susceptible to ready separation such that a class action might be superior to other available methods of adjudication.

## ORDER

On February 4, 1975, this Court filed an order (doc. 67) denying plaintiff's request that this case be designated as a class action, which order was accompanied by an opinion (doc. 66), setting forth our reasons therefor. Since the date of that order plaintiff has filed two motions which are currently pending before this Court. We shall first consider plaintiff's motion requesting that we amend the above order to include certification under 28 U.S.C. § 1292(b) for purposes of immediate appeal. The motion is vigorously opposed and has been extensively briefed (see docs. 69, 75, and 76 on behalf of plaintiff; and docs. 71, 77, and 73 for defendants).

As stated in our opinion, our decision denying class action status was based largely upon our prior decision in a nearly identical case, *Bill Minnielli Cement Contracting Inc. v. Richter Concrete Corp.*, D.C., 62 F.R.D. 381, 1973–1 Trade Cases ¶ 74,591, at p. 94,613 (S.D.Ohio, 1973). And, as correctly pointed out by plaintiff (doc. 69, p. 3), we had anticipated an interlocutory appeal in *Minnielli, supra*, at 389, 1973–1 Trade Cases at 94,617.

We think the present case is also appropriate for interlocutory appeal and, in fact, may be more appropriate for interlocutory appeal than was *Minnielli*. In the words of the statute, we are of the opinion that our order of February 4, 1975 (doc. 67), "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . .", and we hereby amend our aforementioned order to include such opinion and certification.

We turn now to plaintiff's other motion (doc. 68), which is a motion to clarify this Court's order of October 23, 1973. That order imposed certain limitations upon communications between parties and potential or actual class members. But the order did not forbid:

"communications occurring in the regular course of business or in the performance of the duties of a public office or agency (such as the Attorney General) which do not have the effect of soliciting representation by counsel, or misrepresenting the status, purposes or effect of the action or the orders therein."

While the Attorney General of Ohio thus feels that it is not precluded from advising or communicating with those political subdivisions of the State which it had sought to represent (indeed, plaintiff feels it has a *duty* to so advise and communicate), plaintiff does feel it is "important at this time to resolve any possible question as to the propriety of communications by the Attorney General's office with abortive class members" (doc. 68, p. 3). This motion to clarify is opposed and is briefed (see docs. 68 and 74 for plaintiff; docs. 70 and 72 for defendants).

Without deciding the technical parameters of plaintiff's mandatory "duties" under Ohio law, it is clear that the law permits representation of the sort involved in this case, and we think that the intent and spirit of the order of October 23, 1973, was to permit an essentially "free discourse" between the plaintiff and those political subdivisions which it sought to represent. *Cf.*, Manual for Complex Litigation, § 1.41, at

23 (West Publishing Co., 1973). Further, we agree with plaintiff that the thrust of § 1.41 of the Manual for Complex Litigation (upon which we relied in preparing the order of October 23, 1973) is aimed at "non-public attorneys whose interest in solicitation centers on the aggrandizement of fees" (doc. 74, pp. 1–2), not at public attorneys whose remuneration is based upon "a set salary paid by the State" (doc. 74, p. 2). Hence, we believe the Attorney General should be free to advise and communicate with the political subdivisions in question regarding the antitrust and class action matters herein; and to the extent our previous order may have been ambiguous in that regard, it is hereby clarified accordingly.

It is so ordered.