**ROSE HALL, LTD., Plaintiff,**

**Rose Hall (H.I.), Ltd., Plaintiff (Involuntary) on Second Count,**

v.

**CHASE MANHATTAN OVERSEAS BANKING CORPORATION and Holiday Inns, Inc., Defendants.**

**Civ. A. No. 79–182.**

United States District Court, D. Delaware.

March 31, 1980.

Opinion on Reargument June 27, 1980.

James M. Tunnell, Jr., Andrew B. Kirkpatrick, Jr., and Thomas Reed Hunt, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant Chase Manhattan Overseas Banking Corporation; Milbank, Tweed, Hadley & McCloy, New York City, of counsel.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Holiday Inns, Inc.; Ronald L. Reid and Peter Q. Bassett, of Alston, Miller & Gaines, Atlanta, Ga., of counsel.

## OPINION

STEEL, Senior District Judge:

This action was brought by Rose Hall, Ltd. (Rose Hall) and an involuntary plaintiff, Rose Hall (H.I.) Ltd. (Rose Hall (H.I.)) to recover substantial damages for alleged torts committed by the defendants Holiday Inns, Inc. (Holiday Inns) and Chase Manhattan Overseas Banking Corporation (Chase Overseas). Rose Hall is a Cayman Islands corporation, Rose Hall (H.I.) is a Jamaican corporation. Chase Overseas is an "Edge Act corporation" chartered under federal law. 12 U.S.C. § 601. Holiday Inns is incorporated under the laws of Tennessee. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1332 and 12 U.S.C. § 632. The case is before the Court upon a motion of Holiday Inns to dismiss and a motion of Chase Overseas for summary judgment.

## HOLIDAY INNS' MOTION TO DISMISS

The complaint contains two counts. The first count alleges a claim by Rose Hall against both Holiday Inns and Chase Overseas. The second count alleges a claim by Rose Hall (H.I.) as an involuntary plaintiff solely against Holiday Inns.

### The First Count

Summarized, the salient facts alleged in the first count are:

In 1968, Rose Hall was the beneficial and record owner of all of the issued and outstanding stock of Rose Hall (H.I.).

Some time later Rose Hall (H.I.) began the construction in Jamaica of the Rose Hall Holiday Inn ("Hotel Asset").[1] The hotel was permanently financed by the Bank of Nova Scotia by a loan to Rose Hall (H.I.) of $6,250,000. The loan was secured by a first mortgage on Rose Hall's real estate, a pledge of the proceeds of the lease of the property by Rose Hall (H.I.) to Holiday Inns,[2] and a bill of sale covering all the furniture, furnishings and equipment at the hotel. The government of Jamaica guaranteed the repayment of the loan to the Bank of Nova Scotia.

Prior to December 1977, Rose Hall was also the owner of approximately 5,500 acres of real estate in Jamaica which was proximate to the hotel.

On May 28, 1974, in an unrelated transaction, Rose Hall borrowed U.S. $3,000,000 from Chase Merchant Bankers Jamaica, Ltd. (Chase Jamaica), a wholly owned subsidiary of Chase Overseas. As security Rose Hall gave Chase Jamaica a mortgage on approximately 3,000 acres of real estate proximate to the hotel, a junior security interest in the hotel, and pledged with Chase Jamaica all of the stock of Rose Hall (H.I.). Certain of the 3,000 acres described in the mortgage were not intended to be covered by it and Chase Jamaica agreed that this was so. The complaint (¶ 11) alleges that "Chase"[3] was subject to an implied contractual, equitable and fiduciary duty to Rose Hall to act with reasonable care and in good faith in exercising its powers as mortgagee and pledgee of the real estate and stock of Rose Hall (H.I.).

In mid-1975, Rose Hall began negotiating with the Jamaican government to dispose of the Hotel Asset. The complaint alleges (¶ 13):

The form of the transaction being of no material significance, Rose Hall, Ltd. was agreeable to a sale of the stock of Rose Hall (H.I.), Ltd. or a sale of the Hotel by either Rose Hall (H.I.), Ltd. or by Rose Hall, Ltd., and at various times, the transaction was indeed contemplated in different forms.

One reason Rose Hall had for wishing to dispose of the Hotel Asset was to repay the Chase loan.

By May 1976, Rose Hall had an arrangement with the Jamaican government to sell the "Hotel Asset" for U.S. $13,000,000 assuming that the "Hotel Asset" would be transferred free of the Bank of Nova Scotia mortgage and the Chase security interests. The arrangement was approved by the Urban Development Corporation (UDC), a corporation wholly owned by the Jamaican government, and the Jamaican cabinet. In connection with the transaction Chase, Rose Hall and the Bank of Nova Scotia agreed that Chase would be paid U.S. $1,125,000 from the proceeds of the sale in exchange for which Chase would release its security interests in the Hotel Asset.

Beginning in April 1976, Holiday Inns sought major concessions in its lease of the hotel. Because it feared that it was less likely that they could be obtained if Rose Hall consummated its arrangement with the Jamaican government, Holiday Inns intentionally interfered with those arrangements to the damage of Rose Hall by a number of wrongful and malicious actions which the complaint details.

In the meantime, by early 1976, Chase had decided to close down its Jamaican operations and to liquidate as quickly as possible all of its loans in Jamaica, including its loan to Rose Hall. The complaint alleged that ultimately Chase proceeded to do this without any of the regard required by

---

1. The complaint alleges that the term "Hotel Asset" is used to refer either to Rose Hall (H.I.) or to the Hotel or to both without differentiation. (¶ 7).

2. Actually the lease initially and by later assignment was to wholly owned subsidiaries of

Holiday Inns which guaranteed the lease obligations of the subsidiaries.

3. The complaint alleges (¶ 3) that Chase Overseas and Chase Jamaica are sometimes referred to, separately or collectively as "Chase."

good faith for the implied contractual, equitable and fiduciary duties it owed as mortgagee and pledgee to Rose Hall.

Holiday Inns was aware of the loan from Chase to Rose Hall, and the security which Chase held for the loan, and Chase's desire to close down its Jamaican operations. In February 1976, Chase caused the shares of Rose Hall, Inc., which it held as pledgee, to be transferred to and registered in its name and by May 1976, assumed the management of the company, a fact which was known to Holiday Inns.

Because of the desires of Holiday Inns and Chase to accomplish the objectives beneficial to themselves, and believing that the consummation of Rose Hall's arrangement with the Jamaican government would provide an obstacle to their achieving those objectives, Holiday Inns and Chase conspired and agreed to frustrate the consummation of Rose Hall's arrangement with the Jamaican government. Thereafter, pursuant to the conspiracy, Chase and Rose Hall engaged in a course of conduct detailed in the complaint to prevent the consummation of Rose Hall's arrangement. As a result of their efforts, in August 1976, the Jamaican government terminated the arrangement which Rose Hall had with it.

In September 1976, Chase offered to sell the Hotel Asset to the Jamaican government for U.S. $2,255,000, a greatly reduced and wholly inadequate price, subject to the Bank of Nova Scotia first mortgage of $6,250,000, but free of the Chase security interests. In addition, Chase offered to sell to the Jamaican government for U.S. $1,000,000, the 3,000 acre parcel on which it held a first mortgage despite the fact that the land had a fair market potential of at least $40,000,000.

The complaint alleges that the price at which Chase offered to sell these assets was calculated in disregard of the interests of and its duty to Rose Hall and was only sufficient to allow Chase to recoup its loan

with interest. The offer, the complaint alleges, also furthered objectives of Holiday Inns to obtain major concessions in its lease. In connection with Chase's offer, Chase's parent company, Chase Manhattan Bank, N.A., offered to lend U.S. $5,000,000 to the Jamaican government in order to finance the purchase.

In December 1977, Chase transferred to UDC the stock of Rose Hall (H.I.) and the 3,000 acres of land in accordance with the terms of the offer of September 1976. The transfer of title to the land included acreage which the parties never intended the mortgage to cover. Holiday Inns succeeded ultimately in obtaining major modifications of its rights and obligations with respect to the Hotel Asset.

The complaint alleges that the wrongful acts of Holiday Inns and Chase damaged Rose Hall directly as stated and indirectly in other specified ways.

The first count in the complaint directed against Holiday Inns has two facets: first, a claim by Rose Hall solely against Holiday Inns for interfering with the arrangement which Rose Hall had with the Jamaican government; and second, a claim by Rose Hall against both Holiday Inns and Chase Overseas based upon a conspiracy between them to accomplish their several respective objectives by frustrating the arrangement which Rose Hall had with the Jamaican government.

Holiday Inns argues that in both aspects the first count is barred by res judicata or collateral estoppel based on a judgment rendered in a suit in Georgia by Rose Hall against Holiday Inns.[4]

The law of Georgia controls the effect which this Court must give to the Georgia judgment. 28 U.S.C. § 1738 (1976). Pertinent to the res judicata defense are two sections of the Georgia law, Ga. Code Ann. §§ 110–501, 503.

---

**4.** Holiday Inns also argues that the first count should be dismissed because the plaintiff Rose Hall is not the real party in interest as the Georgia courts have determined. It is not necessary to consider this argument in view of the disposition which is made of the res judicata point.

A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.

Section 503 reads:

A former recovery on grounds purely technical and where the merits were not and could not have been in question, shall not be a bar to a subsequent action brought so as to avoid the objection fatal to the first. For the former judgment to be a bar, the merits of the case shall have been adjudicated.

The Georgia action was begun by Rose Hall against Holiday Inns [5] on September 30, 1976. The substance of the Georgia action was in general the same as in the instant one.[6] See the following paragraphs of the Georgia complaint.

¶ 14 In approximately mid-1975, Plaintiff and Rose Hall, H.I. initiated negotiations with the government of Jamaica, and Rose Hall, H.I. with respect to a proposed sale of the Hotel Property to the Urban Development Corporation a wholly owned subsidiary of the Jamaican government . . . . In early 1976 a purchase price of $13,000,000 for the Hotel Property was agreed upon among all of said parties.

¶ 21(b) Defendant, Thomas W. Lapwing, . . . informed the government of Jamaica that Holiday Inns (Jamaica), Inc. and Holiday Inns had no intention of continuing to operate for the balance of the Lease with Rose Hall, H.I. on the existing rental basis because of substantial operational losses which Holiday Inns (Jamaica), Inc. had sustained in the calendar year 1975, and which it anticipated in the calendar year 1976;

¶ 21(d) On information and belief, Defendant, Thomas W. Lapwing, requested that the transaction between the government of Jamaica and Rose Hall, H.I. be postponed for six months so that Holiday Inns could send a revised lease agreement to the Jamaican Government.

¶ 27 As a direct result of the aforesaid actions of the Defendants, Plaintiff and Rose Hall, H.I. were advised on July 9, 1976 that the Minister of Industry, Tourism and Foreign Trade of the Jamaican government would not take to the House of Representatives or recommend a proposal for a government guarantee to support the aforementioned increased borrowings against the Hotel Property.

¶ 28 As a direct result of Defendants' above described actions, and of Defendants' tortious interference with Rose Hall, H.I.'s enjoyment and use of its property, Rose Hall, H.I. was deprived of the sale of such property.

¶ 32 Because of the failure of the aforesaid proposed sale of the demised premises, Chase has begun negotiating with the Jamaican government to sell the stock of Rose Hall, H.I. and the 3600 acres to the Jamaican government.

¶ 33 As a direct result of Defendants' above described actions, and of Defendants' tortious interference with Plaintiff's enjoyment and use of its property, Plaintiff has been injured and damaged in the sum of $6,750,000.

Complaint, *Rose Hall, Ltd. v. Holiday Inns, Inc.*, C.A. No. C22730 (Ga.Super.Ct., Fulton Cty., filed Sept. 30, 1976), *aff'd*, 146 Ga.App. 709, 247 S.E.2d 173, *cert. denied*, No. 55491 (Ga. Oct. 3, 1978) (reprinted at R. 13–22) [hereinafter Ga. Complaint].

Rose Hall contends that the Georgia judgment is legally insufficient to sustain a res judicata defense because the cause of

---

**5.** Chase Overseas, a defendant in Delaware, was not a party in the Georgia action, nor was Lapwing, an agent of Holiday Inns, a party in Delaware, although he was a defendant in Georgia. These facts are irrelevant to the res judicata issue here involved.

**6.** The mere fact that the same general course of wrongful conduct was involved in the Georgia action as in this, does not demonstrate that the causes of action in the two cases are the same. *See, e. g., Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955).

action in Georgia was different from that alleged in Delaware.

The Georgia court held that Rose Hall could not legally or properly bring a direct action against Holiday Inns for tortiously interfering in the contract negotiations "between Rose Hall (H.I.) and the Jamaican agency," and that the claim which Rose Hall was attempting to assert directly was only assertable by Rose Hall (H.I.) or derivatively by a stockholder of record. *Rose Hall, Ltd. v. Holiday Inns, Inc.*, 146 Ga.App. 709, 247 S.E.2d 173, 175, *cert. denied*, No. 55491 (Ga. Oct. 3, 1978).

Rose Hall argues that in the present case it alleges a cause of action directly against Holiday Inns, independent of Rose Hall (H.I.), whereas in the Georgia suit Rose Hall did not assert a direct claim against Holiday Inns. This is inconsistent with Rose Hall's position in the Georgia litigation. (R 407).[7] There Rose Hall argued "this case has been and continues to be a direct claim by plaintiff and not a derivative claim on behalf of Rose Hall (H.I.)" and that Holiday Inns "interfered directly with the primary rights of plaintiff and not with the rights which could only be asserted derivatively by or on behalf of Rose Hall (H.I.)." (R 410).

Rose Hall also points out that in the instant case it alleged that a conspiracy existed between Holiday Inns and "Chase" in which they participated in the breach of duty by Chase as pledgee and mortgagee, whereas in Georgia no conspiracy was alleged.

Rose Hall, however, possessed factual knowledge which would have enabled it to have included the conspiracy charge in the Georgia action. On October 4, 1976, Rose Hall and its subsidiary, Rose Hall Develop-

ment, Ltd. (Rose Development) began an action, to be discussed later, in the Supreme Court of Judicature of Jamaica against Chase Jamaica, a subsidiary of Chase Overseas, and Rose Hall (H.I.), Ltd. In that action plaintiff alleged facts closely related to those which were alleged as the basis of the conspiracy charge. *See* Statement of Claim, ¶¶ 21–24, *Rose Hall, Ltd. v. Chase Merchant Bankers Ja. Ltd.*, No. E.211 of 1976 (Jamaica Supr.Ct. of Judicature, filed Oct. 27, 1976) (reprinted at RX 522–530) [hereinafter Statement of Claim]. In paragraphs 23 and 24, plaintiff alleged:

23. The agents of Holiday Inn and in particular one Thomas W. Lapwing, thereupon indicated that the reaction of the lessees [Holiday Inns of Bahamas] would be to suggest a delay in the proposed sale, that the first Defendant company [Chase Merchant Bankers Ja. Ltd.] should exercise its power of sale and that the consequential forced sale could be effected at a price that was lower than that negotiated and so facilitate the revision of its lease. . .

24. Despite the foregoing, the Defendant companies in or around August 1976, invited, co-operated in, and/or conducted negotiations with Holiday Inn, regarding the revision of the said lease and/or the relationship between Holiday Inn as lessee and the second Defendant company as lessor. Further the Defendant companies communicated this to the U.D.C. and sought to get the U.D.C. involved in this course of conduct and in the course of acting as aforesaid, the first Defendant company stated that it was the owner of the second Defendant company.

---

7. Throughout the opinion references will be made to affidavits, the record and other papers in the Georgia and Jamaica litigation, to briefs and argument in the present case. These will be indicated as follows: affidavits, name of affiant, I, II, etc., if more than one; plaintiff's main brief, Doc. No. 29, PB; Holiday Inns' main and reply brief, Doc. Nos. 20 and 33, HIB and HIRB; and the main and reply brief of Chase Overseas, Doc. Nos. 23 and 35, COB and CORB; matters pertaining to the Georgia litigation and the Jamaica litigation, as compiled in Doc. No. 21–22E, R or RX as paginated therein; and the argument in the present case, Doc. 38, TR.

In the Particulars in the Statement of Claim, plaintiff alleged in paragraph (30) that the "defendants," [8]

(e) Placed itself in a position where it was in collusion with or acting in co-operation with the lessees to delay the conclusion of the negotiated sale, produce circumstances of a forced sale, facilitate the revision of the lease, and/or weaken the bargaining position of the lessor and so devalue the security. (RX 528).

■ These allegations of collusion and cooperation between Holiday Inns and Chase Jamaica, a Chase Overseas subsidiary, could have been the basis for a conspiracy charge in the Georgia action. This would have been possible even though Chase Jamaica and Chase Overseas were not defendants and were beyond the reach of process in Georgia. A conspiracy is a tort for which the conspirators are jointly and severally liable, and a case cannot be dismissed for nonjoinder even though only one conspirator is subject to the jurisdiction of the court. *Wall v. Wall,* 176 Ga. 757, 168 S.E. 893, 895 (1933).

As a further basis for distinguishing the cause of action in Georgia from the present one, Rose Hall asserts that it was not actually deprived of its stock of Rose Hall (H.I.) until December 31, 1977, (¶ 27, Del. Complaint) when Chase transferred the Rose Hall (H.I.) stock to UDC, and that this was after the trial court's decision was rendered in Georgia on October 19, 1977. However, on September 14, 1976, Chase had offered to sell the shares of Rose Hall (H.I.) to the Jamaican government for U.S. $2,255,000. This fact was known to Rose Hall long before the trial court in Georgia rendered its decision. *See* Statement of Claim ¶ 28 (reprinted at RX 527).

■ Beyond this, the fact that Chase did not offer to sell the stock of Rose Hall (H.I.) or consummate the sale until after the Georgia suit had been begun is irrelevant insofar as the res judicata effect of the Georgia judgment is concerned. The amount of the consideration realized from the sale may be relevant to the damages plaintiff sustained from the alleged tortious interference with its rights. It was not relevant to whether plaintiff was entitled to recover for the alleged tortious interference with his rights which occurred in the summer of 1976. *See Rothstein v. First National Bank of Atlanta,* 141 Ga.App. 526, 233 S.E.2d 802 (1977).

Even if Rose Hall is right in asserting that the matters in issue in Georgia where distinguishable from those in issue in Delaware, this is not consequential. The issues and theories involved in the Delaware action, as Rose Hall defines them, might just as well have been placed in issue in Georgia, either separately or in conjunction with the issues which were actually involved there.

■ Under Georgia law, a judgment on the merits by a court of competent jurisdiction in one action is conclusive between the same parties in a later action not only as to all matters actually put in issue but also as to those which might have been put in issue. Ga. Code Ann. § 110–501. Rose Hall may not split its cause of action as it has attempted to do and thus avoid the effect of a res judicata plea. *Summer-Minter & Assoc., Inc. v. Giordano,* 231 Ga. 601, 203 S.E.2d 173, 176 (1974); *Smith v. Bird,* 189 Ga. 105, 5 S.E.2d 336, 338 (1939).

Finally, Rose Hall argues that the Georgia judgment was not on the merits and hence under Georgia law, Ga. Code Ann. § 110–503, it cannot have the effect of a res judicata bar.

In Georgia the defendants moved for summary judgment on the ground that the record ownership of the stock of Rose Hall (H.I.) was in Chase as of February 1976, which was several months prior to the time when the tortious interference is alleged to have occurred in July 1976. The defendants also moved to dismiss the complaint on the ground that the proper party plaintiff

**8.** The context shows that Chase Jamaica was meant.

was either Rose Hall (H.I.) or Chase or both and not Rose Hall, Ltd.[9]

On October 19, 1977, the Superior Court of Fulton County, the trial court, granted the motions "only insofar as they related to defendants' contention that the claim alleged can only be brought by or on behalf of Rose hall (H.I.) Ltd. and not as a direct action by plaintiff Rose Hall, Ltd."

On June 23, 1978, the Court of Appeals affirmed the judgment of the trial court. *Rose Hall, Ltd. v. Holiday Inns, Inc.*, 146 Ga.App. 709, 247 S.E.2d 173 (1978). Its accompanying opinion based its affirmance upon two grounds. The first is:

"[T]here is no showing that the alleged wrong amounted to a breach of duty owed to Rose Hall, Ltd. personally by Holiday Inns. *Schaffer v. Univ. Rundle Corp.*, 397 F.2d 893, 896 (5th Cir., 1968); Restatement of Torts, § 376, Note k, at p. 60 (1939).

It follows that Rose Hall, Ltd. could not legally or properly bring a direct action for tortious interference in the contract negotiations between Rose Hall (H.I.) and the Jamaican agency. Inasmuch as the record does not plead a derivative action nor support such an action, the trial court properly granted summary judgment to Holiday Inns and its agent Lapwing.[10] *Id.* 247 S.E.2d at 175.

The second ground of the decision is the requirement of Georgia law that every action be prosecuted in the name of the real party in interest and not by one whose right is derivative. Since the action was not brought by Rose Hall (H.I.) the court held that it was not brought by the real party in interest. *Id.*[11]

■ In Georgia, under certain circumstances, a summary judgment is an adjudication on the merits. *E.g., Summer-Minter & Assoc., Inc. v. Giordano*, 231 Ga. 601, 203 S.E.2d 173, 176 (1974); *Ogden Equipment Co. v. Talmadge Farms, Inc.*, 232 Ga. 614, 208 S.E.2d 459, 459 (1974). Likewise, a dismissal for failure to state a claim may, under certain circumstances, be an adjudication on the merits. *E.g., Dillingham v. Doctors' Clinic, P.A.*, 236 Ga. 302, 223 S.E.2d 625, 626 (1976); *Sirmans v. Allen*, 221 Ga. 703, 146 S.E.2d 761, 762 (1966); *Hadden v. Fuqua*, 192 Ga. 668, 16 S.E.2d 737, 742 (1941). On the other hand, there are circumstances under which the dismissal of suits before trial are not deemed to go to the merits and consequently will not have res judicata effect in later actions. *O'Kelley v. Alexander*, 225 Ga. 32, 165 S.E.2d 648, 650 (1969) (failure to pay costs of previous action).

In *National Heritage Corp. v. Mount Olive Memorial Gardens, Inc.*, 244 Ga. 240, 260 S.E.2d 1 (1979), the court held that when res judicata is presented as a defense based upon summary judgment the court should examine the underlying basis for the summary judgment. It stated that if the judgment was actually an adjudication on the merits, it would be entitled to be pleaded as res judicata; on the other hand, if it was

---

9. This is the way the Court of Appeals characterized the motions before the trial court. 247 S.E.2d at 174. This characterization is not significantly different than the terms of the motions themselves. The motion for summary judgment and/or motion to dismiss is found at R 373, the motion for determination of defenses at RX 4, and the defenses referred to in the latter motion are found at R 96.

10. The opinion provides the explanation why the record would not support a derivative action. It pointed out that under Georgia law before a stockholder could bring a derivative action it had to be a shareholder of record at the time of the transaction complained of. Rose Hall was not qualified to bring a derivative action since, as the court pointed out, the record holder of Rose Hall (H.I.) stock was Chase as of February 1976, and the tortious interference complained of did not occur until July 1976. 247 S.E.2d at 174–75.

11. An application for a writ of certiorari was filed with the Supreme Court of Georgia and was denied on October 3, 1978. (RX 214). Following this presumably the mandate (or the Georgia equivalent) was sent by the Court of Appeals to the Fulton County Superior Court which noted on October 27, 1978, "the judgment of the Court of Appeals of the State of Georgia in the within state case be and the same is hereby made the judgment of this Court." (RX 215).

not an adjudication on the merits, such as "a dilatory plea, etc." the res judicata plea should be denied. *Id.* 260 S.E.2d at 3.

Of the cases relied upon by Rose Hall to sustain its contention that the earlier Georgia adjudication was not on the merits, three involved dilatory pleas of one kind or another, such as temporary incapacity (later curable) to proceed with the suit. *See Johnston v. Fancher,* 447 F.Supp. 512, 514 (W.D.Okl.1977); *National Heritage Corp.,* 260 S.E.2d at 3; *Clover Realty Co. v. J. L. Todd Auction Co.,* 240 Ga. 124, 239 S.E.2d 682, 682–83 (1977).[12] Another involved lack of standing. *People ex rel. Scott v. Chicago Park District,* 66 Ill.2d 65, 4 Ill.Dec. 660, 663, 360 N.E.2d 773, 776 (1976).[13] None of these cases was held to have reached the merits.

■ Plaintiff notes that according to Ga. Code Ann. § 81A–141(b), a dismissal "for lack of jurisdiction" is not on the merits, and that the court in *O'Kelley v. Alexander,* 225 Ga. 32, 165 S.E.2d 648, 650 (1969), stated that the "phrase ["lack of jurisdiction"] . . . is broad enough to encompass those dismissals which are based on the failure of the plaintiff to comply with a precondition requisite to the trial court's going forward with a determination of the merits of the plaintiff's substantive claim." On this reasoning, the court in *O'Kelley* held that the failure to pay the costs in a prior action which had been voluntarily dismissed amounted to such a failure to satisfy a precondition. Dismissal of a second suit for failure to pay the costs of the earlier action therefore was held not on the merits

and would not have res judicata effect in a later suit. *Id.* 165 S.E.2d at 650–51. Nothing in *O'Kelley* or in the cases cited in the previous paragraph, however, is at odds with the principle that a summary judgment dismissal which actually reaches the merits is a bar to a subsequent suit.

■ Rose Hall argues that the Georgia adjudication was simply one that the plaintiff was without standing to bring the action. This conclusion is inconsistent with the language of the Court of Appeals. It held that Rose Hall had not alleged a breach of duty which Holiday Inns owed to it personally, and that because of this Rose Hall could not legally or properly bring a direct action for the breach against Holiday Inns. This was a substantive determination. It ruled out the possibility that Rose Hall could ever acquire a standing which would enable it personally to sue Holiday Inns for the tort which was alleged or might have been alleged in the Georgia complaint. Nothing that Rose Hall might do in the future could give it a standing to do what it unsuccessfully tried to do in the Georgia action.

Rose Hall places unwarranted significance upon the limited terms of the trial court's order of October 19, 1977, in which defendants' motions were granted "only insofar as they relate to defendants' contention that the claim alleged can only be brought by or on behalf of Rose Hall (H.I.) Ltd." The significance of the "insofar as" clause is clear. It was meant only to prevent the Georgia judgment from barring a

---

12. In *Johnston* plaintiff, being a resident of Texas, brought an action as guardian under a void Oklahoma appointment. Accordingly summary judgment was granted because of plaintiff's lack of authority under Oklahoma law. The judgment was held not to be a bar to another action by plaintiff after he had been appointed guardian under Texas law. 447 F.Supp. at 513–515.

In *Clover Realty* a judgment of dismissal was entered in an earlier action because plaintiff had failed to join as a party the defendant in the second suit. The dismissal was held not to be res judicata in the second suit. The Georgia Supreme Court stated that because of the plaintiff's failure to join a party "the merits

could not be reached because of the failure of the plaintiff to satisfy a precondition, and the dismissal was accordingly without prejudice." 239 S.E.2d at 682–83.

*National Heritage* held that the dismissal of an action because of the corporate plaintiff's failure to hold a certificate of authority was not a bar to an action after the same plaintiff had obtained a certificate of authority.

13. In *Scott* the dismissal of a suit by a taxpayer to enjoin the sale of lands merely because the taxpayer lacked standing to bring the suit was held not to be res judicata in a later action by the Attorney General to enjoin the same sale. 4 Ill.Dec. at 663, 360 N.E.2d at 776.

later action brought by or on behalf of Rose Hall (H.I.). This is its only significance. The rights which the "insofar as" clause was intended to preserve are not encompassed with the first cause of action.

The Georgia judgment is a bar to Rose Hall prosecuting the first count of the complaint against Holiday Inns.

### The Second Count

As an alternative to the first count, the second count purports to allege a cause of action by Rose Hall (H.I.) as an involuntary plaintiff against Holiday Inns based upon the allegations of the first count. The second count alleges that Rose Hall (H.I.) should "legally and morally" press the action as a plaintiff. Its joinder as an involuntary plaintiff is justified, the complaint alleges, because it and the Urban Development Corporation, the new owner of the stock of Rose Hall (H.I.) have refused to join in the litigation. The complaint alleges that any damage award should be paid to Rose Hall and not to Rose Hall (H.I.). Procedurally, Rose Hall claims that Rule 19, Fed.R.Civ.P., authorizes joining Rose Hall (H.I.) as an involuntary plaintiff.

Rule 19(a) provides that under certain conditions "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party . . . . If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or in a proper case, an involuntary plaintiff. . . ."

Both parties agree, in accordance with the authorities generally,[14] that one may be made an involuntary plaintiff only if it cannot be served with process and that Rose Hall (H.I.), being a Jamaican corporation, is beyond the reach of process in Delaware.

Most of the argument of the parties is devoted to the question whether this is "a proper case" for Rose Hall (H.I.) to be named an involuntary plaintiff. It is unnecessary to decide this question.

Even if this were deemed to be a proper case for plaintiff to name Rose Hall (H.I.) as an involuntary plaintiff, Rose Hall (H.I.) would have to be realigned as a defendant and this would deprive the court of diversity jurisdiction.

█ The designation of parties as plaintiff or defendant in the formal pleadings is not determinative of their position for purposes of jurisdiction. If the parties are not properly aligned the court, before determining diversity, will realign them according to their interests. 3A Moore's Federal Practice ¶ 19.03[1] at 19–43 through 19–44 (1978).

Rose Hall is attempting to use the involuntary plaintiff procedure as a substitute for a derivative suit which it has no standing to bring, not being a stockholder of Rose Hall (H.I.).

█ The parallel between the procedure requisite to the institution of a derivative action and the utilization of the involuntary plaintiff technique make relevant the realignment principles and their jurisdictional consequences of derivative actions. No derivative action can be brought unless the plaintiff has requested the directors of the corporation, and in some instances the stockholders, to bring the action and they have refused. *Hawes v. Oakland*, 104 U.S. 450, 461, 26 L.Ed. 827 (1881); *Ainscow v. Sanitary Co. of America*, 21 Del.Ch. 35, 36–37, 180 A. 614 (Ch.1935); *see In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Similarly, an absent person may not be named

---

14. "A party may be made an involuntary plaintiff only if he is beyond the jurisdiction of the court, and is notified of the action, but refuses to join." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1606 at 51 (1972); *see* 3A Moore's Federal Practice, ¶ 1906 at 19–96 through 19–98 (1978); Annot., 20 A.L.R. Fed. 193, 203 (1974). *Catanzaro v. International Telephone and Telegraph Corp.*, 378 F.Supp. 203 (D.Del.1974) seemingly stands alone in holding that only if one is subject to personal jurisdiction can he be made an involuntary plaintiff.

as an involuntary plaintiff unless it has been requested to act as a voluntary plaintiff and has refused. *Independent Wireless Co. v. Radio Corp. of America*, 269 U.S. 459, 473, 46 S.Ct. 166, 171, 70 L.Ed. 357 (1926).

In a derivative action the plaintiff stockholder sues on behalf of the corporation against third parties who are alleged to be wrongdoers. The corporation must be named a defendant. 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5997 (rev. ed. 1970). If successful in the action the corporation is the direct beneficiary and the stockholder benefits only indirectly through its stock ownership. The corporation, vis-a-vis the wrongdoers, has the status of a plaintiff and in this sense the corporation and the wrongdoers are the adverse parties. Yet the corporation vis-a-vis the plaintiff stockholder, because of its refusal to yield to plaintiff's request to sue, has the status in law of a defendant. Any jurisdictional diversity issue is tested by considering the plaintiff stockholder and the corporation as adverse parties.

*Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) was a stockholders' derivative action in which the district court had held that although the corporation was named as a defendant it had in fact been brought for its benefit and therefore should be realigned as a plaintiff in which case diversity of citizenship would be absent. The Supreme Court reversed. It said, "The cause of action, to be sure, is that of the corporation. But the corporation has become through its managers hostile and antagonistic to the enforcement of the claim. . . . This is a practical and not a mechanical determination and is resolved by the pleadings and the nature of the dispute." *Id.* at 97, 77 S.Ct. at 1116. The *Sperling* case was followed in *Swanson v. Traer*, 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957). It held that "where the management—for good reasons or for bad—is definitely and distinctly opposed to the institution of the litigation . . . [t]he management is, therefore, antagonistic to the stockholders as that concept has been used in the cases. It follows that the corpo-

ration was properly made a defendant." *Id.* at 116, 77 S.Ct. at 1118.

In the instant case, despite the fact that Rose Hall desires for its own ultimate benefit to prosecute the action in the name of Rose Hall (H.I.), Rose Hall and the involuntary plaintiff, Rose Hall (H.I.) must be deemed legally to have positions adverse to each other because of Rose Hall (H.I.)'s refusal to join in the action at Rose Hall's request. This teaching of the derivative cases is applicable to the instant one.

Thus, if Rose Hall (H.I.) were realigned as a defendant, as it must be, the jurisdictional posture of the case is an action by Rose Hall, a Cayman Islands corporation, against Rose Hall (H.I.), a Jamaican corporation. While 28 U.S.C. § 1332(a)(2) authorizes citizens of a state to sue aliens, no authority exists for one alien to sue another.

Consequently, even if this were deemed to be a "proper case" for Rose Hall (H.I.) to be named as an involuntary plaintiff, it may not be since it would deprive the court of diversity jurisdiction.

## MOTION OF CHASE OVERSEAS FOR SUMMARY JUDGMENT

The cause of action alleged against Chase Overseas is based upon a conspiracy between it and Holiday Inns which had two purposes: first, to frustrate the arrangement which Rose Hall had with the Jamaican government, and second, to enable Chase Overseas to wrongfully foreclose on the mortgage on Rose Hall's real estate and the pledge of Rose Hall's stock in Rose Hall (H.I.) and thereafter to sell these assets at grossly inadequate prices. The actions taken by Chase Overseas pursuant to the conspiracy were "without having any of the regard required by good faith for the implied contractual, equitable and fiduciary duties it owed as mortgagee and pledgee to Rose Hall, Ltd." (Del. Complaint ¶¶ 18, 20).

Chase Overseas has moved for summary judgment on a number of grounds. One is that Delaware is not a proper forum for the action and that it should either be dismissed

under the doctrine of *forum non conveniens* or, alternatively, stayed as a matter of discretion. This is a threshold question.

The interest of Rose Hall in bringing the action in Delaware is beyond question. The indirect but ultimate beneficiary of the action, if successful, is John Rollins, a resident of Delaware. He owns all of the stock of Rollins Jamaica, Ltd., a Delaware corporation, which in turn owns all of the stock of Rose Hall, a Cayman Islands corporation. Chase Overseas is an Edge Act corporation, organized under 12 U.S.C. §§ 611–632 (1976) and has designated Newark, Delaware as its home office. This court has jurisdiction over questions arising under the Act. § 632.

Chase Overseas argues that Jamaica is the proper forum in which to try this action since Rose Hall has previously begun an action there where the parties and issues are the same as in this action. This Jamaican suit is still pending.

On October 8, 1976, Rose Hall and Rose Developments, its wholly owned subsidiary, brought an action against Chase Jamaica and Rose Hall (H.I.) in the Supreme Court of Judicature of Jamaica. The action sought to enjoin Chase Jamaica and Rose Hall (H.I.) from selling collateral held by Chase Jamaica as security for the loan which it had made to Rose Hall and was also for damages. Rose Hall claimed that Chase Jamaica and Rose Hall (H.I.) had acted "negligently, fraudulently and/or in bad faith" in negotiating for the sale of the collateral, and in addition that they had cooperated in order to delay the sale of the hotel and thus facilitate the renegotiation of the hotel lease and to devalue the mortgaged property and the Rose Hall stock. It is also claimed that Chase Jamaica had agreed to sell the stock of Rose Hall (H.I.) and the mortgaged property at grossly undervalued prices.

On November 22, 1976, after eight days of hearings on the injunction application the Jamaican court orally denied the injunction on the ground that Rose Hall's damage remedy would be adequate. In a written judgment dated September 27, 1977, the court, in addition to a third issue, reserved for trial the following two issues:

> (a) Is the price proposed for the hotel shares and the 3,000 acres of land so low as to be evidence of fraud?
>
> (b) Are the circumstances and manner of the sale indicative of a reckless disregard of the interest of the plaintiff?

*Rose Hall, Ltd. v. Chase Merchant Bankers Ja. Ltd.*, No. E.211 of 1976, slip op. at 7 (Jamaica Supr.Ct. of Judicature, Sept. 27, 1977) (reprinted in Nunes I, Doc. 25, Exh. D) [hereinafter Jamaica Opinion].

Having failed to obtain a stay, plaintiffs' appeal from the judgment denying their application for an injunction was dismissed by the Court of Appeals for want of prosecution. The Jamaica action has been awaiting trial since that time. Plaintiffs have taken no further action in Jamaica. In December 1977, Chase Jamaica conveyed the stock of Rose Hall (H.I.) and the mortgaged property to the Jamaican government. (Nunes I, Doc. 25).

Basically there are two reasons why Delaware rather than Jamaica is the proper jurisdiction in which to try this action. Chase Overseas, the defendant in Delaware, is not a party to the Jamaica suit and is beyond the reach of process there. Furthermore, this action involves the interpretation of the Edge Act, a federal law upon which Rose Hall importantly rests its claim. This can more appropriately be decided by a court in the United States, particularly as the question here has never been decided. It is true, of course, that whether Chase Jamaica tortiously interfered with plaintiff's arrangement with the Jamaican government and wrongly sold plaintiff's collateral at a grossly inadequate price are questions which are common to both this and the Jamaica action. Whether, however, under the Edge Act Chase Overseas can be held liable for the acts of wrongdoing, if any, of its subsidiary Chase Jamaica, is solely an issue in this action. It comes with ill grace for Chase Overseas to argue that Rose Hall should be required to press its claim in Jamaica where it is at least doubtful whether a judgment, if obtained,

can be satisfied. *See* Rollins, Doc. 30, ¶¶ 16 and 17; Weaver, Doc. 28, ¶ 35. *But see* Brown II, Doc. 34, ¶ 13.[15]

An additional consideration favoring acceptance of Delaware as a proper forum is the fact that pretrial discovery and trial practices in this court are substantially more favorable to a plaintiff than in Jamaica. *Compare* Mahfood I, Doc. 31 *with* Nunes II, Doc. 37. If the case gets to trial it will probably be important for witnesses located in both Jamaica and in the United States to testify and for documents located in both jurisdictions to be produced. At this juncture it would seem that evidentiary testimony and data would probably be just as available in the United States as in Jamaica, although this is not a controlling consideration.

The motion of Chase Overseas for summary judgment on the ground of *forum non conveniens*, or, alternatively, to stay the action as a matter of discretion should be denied. None of the cases cited by the defendant supports a contrary conclusion.

■ Next, Chase Overseas contends that the action should be dismissed because Chase Jamaica has not joined as a party defendant although it is a necessary or indispensable party under Rule 19, Fed.R. Civ.P.[16]

Chase Jamaica is not subject to service of process in Delaware, although it has an interest relating to the subject matter of the action. Nonetheless, complete relief between Rose Hall and Chase Overseas can be granted without the joinder of Chase Jamaica. The absence of Chase Jamaica will not as a practical matter impair or impede its ability to protect its interest as that interest will be protected by the defense of this action by Chase Overseas whose interest is the same as that of Chase Jamaica.

---

**15.** In denying the injunction the Supreme Court of Judicature of Jamaica stated that Chase Jamaica is in a position to pay whatever damages might be awarded to the plaintiffs. Jamaica Opinion at 15. The court said that the assets of Chase Jamaica totaled approximately J $10,-000,000 (roughly U.S. $5,000,000 based upon today's exchange rates). The court added that apart from Chase Jamaica's own investment Chase Jamaica acts as agent for Chase Overseas in respect to the bank's direct investments in Jamaica. The court thus based its assertion that Chase Jamaica was financially able to satisfy a judgment ostensibly upon the assumption that Chase Overseas, as agent for Chase Jamaica, would assist it in satisfying any judgment. Plaintiff, the court said, quantified its claim at about $10,000,000, if its contention as to the true market value of the land and shares were upheld. In the case at bar Rose Hall bases its claimed loss from the sale of the land and Rose Hall (H.I.) stock, plus indirect damage to other property owned by Rose Hall, to be well in excess of $50,000,000. (Del. Complaint ¶¶ 29, 30, 31, 32).

**16.** Fed.R.Civ.P. 19 provides in pertinent part:

JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the dispo-

sition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)—(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Nor will the absence of Chase Jamaica leave Rose Hall or Chase Overseas subject to substantial risk of incurring inconsistent obligations by reason of the claimed interest of Chase Jamaica. Because these circumstances do not satisfy Rule 19(a), it is not necessary for the court to inquire whether under Rule 19(b) the action in equity and good conscience should proceed between Rose Hall and Chase Overseas or should be dismissed. It follows that Chase Jamaica is not an indispensable or necessary party under Rule 19.

Chase Overseas next contends that the complaint should be dismissed because it fails to state a claim against Chase Overseas. The affidavit of Edward C. Brown, a Director of Chase Jamaica, states in ¶ 21 that all of the relevant actions taken and transactions entered into which formed the basis of the claims pleaded by Rose Hall were not taken by Chase Overseas but by Chase Jamaica, a separate and distinct entity from Chase Overseas. Brown I, Doc. 24. Rose Hall does not take issue with these facts. It argues that Chase Overseas is liable under the Edge Act for the wrongs of Chase Jamaica.[17] While the complaint does not allege that Rose Hall's claim is based upon the Edge Act, an amendment to the complaint, if needed, would be warranted since no responsive pleading has been filed. *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977); *Kelly v. Delaware River Joint Commission*, 187 F.2d 93, 94 (3d Cir. 1951). Because the liability of Chase Overseas under the Edge Act has been thoroughly briefed and argued, the Court will deal with the question.

Whether Chase Overseas is liable under the Edge Act for the alleged wrongs of its wholly owned subsidiary, Chase Jamaica, is a novel question. Nothing in the legislative history of the Act or in judicial precedents is helpful in resolving it. It must be answered through an analysis of the terms of the Act itself.

Authority to organize an Edge Act corporation is found in 12 U.S.C. § 611. It authorizes five or more persons to form a corporation "for the purpose of engaging in international or foreign banking or other international or foreign financial operations." It may do this "either directly or through the agency, ownership or control of local institutions in foreign countries."[18]

Section 615 states that, subject to such rules and regulations as the Board of Governors of the Federal Reserve System may prescribe, an Edge Act corporation shall have power: "(b) [t]o establish and maintain for the transaction of its business branches or agencies in foreign countries" and "(c) [w]ith the consent of the Board of Governors of the Federal Reserve System to purchase and hold stock . . . in any other corporation organized . . . under the laws of any foreign country."

 If an Edge Act corporation should elect to carry on its business in a foreign country through a branch or an agency it would be liable for acts of the branch or agency.[19] Liability would arise because of the corporation's ownership of the branch and, if the business was carried on through an agency, on the theory of respondeat superior. Conceptually, under either method of doing business the relationship would be one of control by the corporation of the entity. If an Edge Act corporation should do business in a foreign country through the acquisition of stock in a "local institu-

---

17. Chase Overseas is what is known as an "Edge Act corporation" chartered under the Act of Dec. 24, 1919, c. 18, 41 Stat. 378. This amended Section 25 of the Federal Reserve Act is to provide for federally chartered corporations to be organized for the purpose of engaging in international or foreign banking or other international or foreign financial operations. The Edge Act is found in 12 U.S.C. § 611–632 (1976), and an Edge Act corporation means a corporation organized under these provisions. 12 C.F.R. § 20.2(a) (1979).

18. All underscoring supplied unless otherwise indicated.

19. At the argument defendant acknowledged that if wrongs were committed by a branch or by an agency, the defendant would be "suable." In the context this undoubtedly meant that it would be liable. (TR 63).

tion" control of the Edge Act corporation over the local institution is a mandated prerequisite to its organization.

There may be limits to the nature and magnitude of the operations of Chase Jamaica that the Edge Act requires that Chase Overseas control. Activities demanded in the normal day-by-day operation of Chase Jamaica may be outside the intendment of the control requirement of the statute. The actions of Chase Jamaica which are involved in this action are not of this kind. They involve major decisions of policy and actions taken to implement them. Chase Jamaica lent Rose Hall $3,000,000. It took as security a mortgage on 3,000 acres of land, a pledge of all of the stock in Rose Hall (H.I.) and a second mortgage denominated an "equitable charge" on lands on which Holiday Inn was located. The Board of Directors of Chase Jamaica adopted resolutions adding three of its representatives to the Board of Directors of Rose Hall (H.I.) and authorized John W. Rollins, Sr., Chairman and Director of Rose Hall, to continue negotiating with the government of Jamaica for the sale of the Hotel Asset. It later requested Rollins to take no further part in the negotiations and assumed to handle future negotiations itself. In September 1976, Chase Jamaica offered to sell to the Jamaican government for $3,255,000 the assets which it held as collateral. Later Chase Jamaica, exercising the power of sale contained in the first mortgage, conveyed title to the mortgaged real estate to the Jamaican government for $1,000,000 and simultaneously sold to it the stock of Rose Hall (H.I.) for $2,255,000. (Brown I, Doc. 24). This was pursuant to a decision which "Chase" made in early 1976

to close down its Jamaican operation and to liquidate all its loans in Jamaica. (Del. Complaint ¶ 18).

■■■ When the Edge Act was passed Congress must have intended that major actions of such importance taken by Chase Jamaica would be subject to the control of Chase Overseas, and not undertaken independently.

Neither the facts nor the law upon which defendant relies is inconsistent with this conclusion. Brown's affidavit (Brown I, Doc. 24, ¶ 21) simply affirms that the actions which plaintiff complains about were all taken by Chase Jamaica which was a separate and distinct entity from defendant. As stated, Rose Hall does not controvert these facts. Nowhere does Chase Overseas deny that the Edge Act required it to control Chase Jamaica when it took major actions in carrying out Chase Overseas' foreign business. This is the critical issue and not whether Chase Jamaica is a separate entity or whether Chase Jamaica committed the acts complained of.

*Pan American Bank & Trust Co. v. National City Bank*, 6 F.2d 762 (2d Cir.), *cert. denied*, 269 U.S. 554, 46 S.Ct. 18, 70 L.Ed. 408 (1925) and *In re Harris*, 27 F.Supp. 480 (S.D.N.Y.1939) [20] cited by Chase Overseas, were both decided under the National Banking Act, 12 U.S.C. §§ 601—604. [21] Neither dealt with the question whether an Edge Act corporation is required by law to control actions of major importance taken by wholly owned foreign subsidiaries through which an Edge Act corporation carries on its business. That is the question here. [22]

---

**20.** *Harris* was overruled in *First National City Bank of New York v. Internal Revenue Service*, 271 F.2d 616, 619 (2d Cir. 1959), *cert. denied*, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960).

**21.** This Act of Dec. 23, 1913, c. 6, § 25, 38 Stat. 273, was passed in 1913; and as amended, is 12 U.S.C. §§ 601—604a (1976). Section 601 authorizes *any* national banking association first, to establish branches in foreign countries for the furtherance of foreign commerce and to act as fiscal agents of the United States if required, and, second, to invest in the stock of banks or

corporations chartered *under the laws of the United States or any state thereof*, and principally engaged in international or foreign banking. Under Section 601 the *subsidiaries themselves* engage in international or foreign banking. By contrast the Edge Act authorizes the formation of corporations *exclusively* for the purpose of engaging in international or foreign banking *themselves*.

**22.** In *Pan American Bank* the Court of Appeals held that it was proper for a jury to find the defendant liable to the plaintiff when defendant requested the home office of the plaintiff to

■ The final question is whether, viewed most favorably to Rose Hall, sufficient evidence exists to require a trial on the issue of control. This is central to the question of the liability of Chase Overseas in the event that Chase Jamaica is found to have committed actionable wrongs. It must be presumed in the absence of other evidence, that *defendant*, having chosen to exercise rights conferred by the Edge Act, did so in a legal manner, *TRW, Inc. v. National Labor Relations Board*, 393 F.2d 771, 774 (6th Cir. 1968), and that it obeyed the law and discharged the legal obligations imposed upon it, *National Labor Relations Board v. Shawnee Industries, Inc.*, 333 F.2d 221, 225 (10th Cir. 1964). This presumption, without more, might require a trial. There are, however, additional significant facts stated in the Rollins affidavit from which control by Chase Overseas over the actions of Chase Jamaica could be inferred. (¶¶ 4—12, Doc. 30). All of these, except ¶ 12, have been denied by Brown in his affidavit of December 7, 1979, which states that the Rollins affidavit "is replete with factual inaccuracies." (Brown II, Doc. 34, ¶¶ 2—9, 11). The facts in the Rollins affidavit, however, must be taken to be true in resolving the present motion. The facts upon which Rollins and Brown are in sharp disagreement emphasize the need for a trial.

Chase Overseas contends that the doctrine of collateral estoppel bars Rose Hall from asserting its claim for $5,500,000 in damages arising from the allegedly tortious interference by "Chase" and Holiday Inns with Rose Hall's negotiations for the sale of the hotel, a claim which Chase Overseas asserts was dismissed in the Georgia action.

■ Under Georgia law the doctrine of collateral estoppel bars a plaintiff from relitigating issues before the second court which are identical to issues which had been litigated in a prior action and both the plaintiff and defendant in the subsequent action were parties or in privity with parties in the prior suit. *Tootle v. Player*, 225 Ga. 431, 169 S.E.2d 340, 341 (1969). The defendant concedes that this is a correct expression of Georgia law and that the requirement of "mutuality" of estoppel would normally preclude application of the doctrine to bar Rose Hall's claim since neither Chase Overseas nor Chase Jamaica was a party or in privity with a party to the Georgia action. (CO B at 39–40). The defendant argues, however, that this court, in exercising federal question jurisdiction may afford a greater preclusive effect to the Georgia judgment than a Georgia ·court would, in the light of the substantial federal interest of reducing multiplicity of suits in the federal court, citing *Williams v. Ocean Transport, Inc.*, 425 F.2d 1183 (3d Cir. 1970), and *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972) as governing.

■ The federal decisions relied upon by defendant, like the Georgia decisions, all require identity of issues before the doctrine of collateral estoppel can be applied. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 1439–40, 28 L.Ed. 788 (1971); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974). The issues decided by the Georgia court are not the same as those pending in this court. The defendant, Chase Overseas, here was

issue a letter of credit which plaintiff paid but for which it had never been reimbursed. The letter of credit had been presented in the first instance to the branch of the plaintiff in Rio de Janeiro which had negotiated (transferred) it to its New York office. In its discussion,· the court stated that the National Banking Act expressly required national banks having foreign branches to "conduct the accounts of each foreign branch independently of the accounts . . of its home office." It added, "That is, the branch is not a mere 'teller's window'; it is a separate business entity." 6 F.2d at 767.

It was this last statement which was relied upon in *In re Harris* and caused the court to say:

[T]he fact that by Section 604 the accounts of a foreign branch are to be conducted 'independently' of the home office leads to the conclusion that the records of a depositor's account with a foreign branch, not kept here [in New York], are not so within the control of the main office here as to be subject to production by subpoena duces tecum served here.

27 F.Supp. at 481.

not a defendant in Georgia and no issue was presented to the court or decided by it which involved a claim against Chase Overseas.

In Georgia the court decided that Rose Hall could not bring a direct action against Holiday Inns for its tortious "interference in the contract negotiations between Rose Hall (H.I.) and the Jamaican agency." It further decided "[t]here is no showing that the alleged wrong amounted to a breach of duty owed to Rose Hall, Ltd. personally by Holiday Inns." 247 S.E.2d at 175. These are the issues which were decided in Georgia. Here the issues are whether Chase violated implied contractual, equitable and fiduciary duties to Rose Hall. (Del.Complaint ¶¶ 18, 20).

Since the issues before this court and those in Georgia are different, it is unnecessary to decide whether the "mutuality" required under Georgia law for collateral estoppel to apply is dispensable under the federal decisions relied upon by defendant. *See Lynne Carol Fashions, Inc. v. Cranston Print Works Co.*, 453 F.2d 1177, 1183–85 (3d Cir. 1972). The distinction between the issues make inapplicable collateral estoppel as a defense.

The complaint alleges that the land owned by Rose Hall which Chase Overseas foreclosed upon and sold for $1,000,000 was worth $40,000,000 and that the sale disrupted and destroyed a water system which a subsidiary of Rose Hall (Rose Development) owned having a value of $3,500,000 (Del. Complaint ¶¶ 30 and 32). Chase Overseas argues that insofar as the action seeks damages for the wrongful foreclosure on the land and the alleged destruction of the water system, it should be dismissed because it is local and not transitory, and only Jamaica is a proper venue in which to prosecute those aspects of the action. This argument, of course, does not reach Rose Hall's claim that the sale by Chase Overseas of the stock of Rose Hall (H.I.) was wrongful, or the charge that it conspired with Holiday Inns to terminate the arrangement which Rose Hall had to sell the Hotel Asset to the Jamaican government. So far as the claim of improper venue is based on the mortgage foreclosure and damages to the water system, *French v. Clinchfield Coal Co.*, 407 F.Supp. 13 (D.Del.1976) provides an answer which is persuasive with the court.

Finally, Chase Overseas argues that Rose Hall's claims are barred by the applicable statute of limitations and the doctrine of laches. Chase Overseas concedes that the Delaware three-year statute of limitations, 10 Del.C. §§ 8106, 8121, is the one to apply.

■ At the argument Chase Overseas agreed that the time when the limitations statute begins to run is governed by Delaware law. (TR 62). In Delaware the statute of limitations in tort actions begins to run at the time of the injury. *Freedman v. Beneficial Corp.*, 406 F.Supp. 917, 922 (D.Del.1975); *Bradford, Inc. v. Travelers Indemnity Co.*, 301 A.2d 519, 524 (Del.Super.1972); *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del.Super. 1969).

■ The complaint alleges that the first act of the defendant in furtherance of the conspiracy to frustrate plaintiff's arrangement with the Jamaican government took place on August 3, 1976. (¶ 21). In late August 1976, the complaint alleges, the Jamaican government terminated its efforts to consummate the arrangement which it had with Rose Hall. (¶ 23). This is the date when Rose Hall was injured by the conspiratorial actions of Chase Overseas and Holiday Inns allegedly in the amount of $4,500,000. (¶ 29).

The second Nunes affidavit (Doc. 37, ¶ 5) points out that on February 20, 1976, plaintiff transferred record ownership of the shares of Rose Hall (H.I.) to Chase Jamaica and states that under Jamaican law this had the effect of foreclosing the "mortgage" on the shares. This is irrelevant. The complaint alleges that in September 1976, Chase Overseas offered to sell the real estate for $1,000,000 and the stock of Rose Hall (H.I.) for $2,255,000. (¶ 24). In December 1977, the agreement of sale was consummated. (Complaint 27). It was on this date that Rose Hall was injured. The

complaint alleges that the stock was worth at least $5,500,000 and the land at least $40,000,000 more than the sale price. (¶¶ 29, 30).

This section was begun in April 1979. At that time three years from the accrual of the causes of action had not expired. The defense of laches is asserted on the assumption that the action was begun more than three years after the causes of action accrued. (CO B at 47–48). Since the premise is unwarranted the laches defense will not be considered.

## CONCLUSION

The motion of Holiday Inns to dismiss will be granted and the motion of Chase Overseas for summary judgment will be denied.

## OPINION RE REARGUMENT BY HOLIDAY INNS, INC.

The factual background for this opinion is set forth in the opinion dated March 31, 1980.

The instant complaint charges Holiday Inns and Chase with a conspiracy to mutually benefit themselves at the expense of the plaintiff. The conspiracy and its two-fold objectives are alleged in paragraph 20: (1) to frustrate the consummation of the arrangement which plaintiff had with the Jamaican government for the sale of the Hotel Asset and (2) to effect the sale of the Hotel Asset on any terms provided that Chase recouped its loan to plaintiff and to assist Holiday Inns in obtaining concessions in its lease with Rose Hall (H.I.).

The first objective of the conspiracy was achieved in late August 1976, when the Jamaican government terminated its efforts to consummate its earlier arrangement with plaintiff to take over the Hotel Asset. (¶ 23). The other purpose of the conspiracy was accomplished in December 1977, when Chase satisfied plaintiff's loan by transferring to an agency of the Jamaican government the collateral which it held for the defaulted loan. The collateral consisted of the stock of Rose Hall (H.I.) for

which Chase received U. S. $2,255,000 and three thousand acres of land for which Chase received U. S. $1,000,000. (¶ 25). Plaintiff alleges these prices were grossly inadequate. (¶ 24). Ultimately, the other purpose of the conspiracy was accomplished when Holiday Inns obtained a major modification of its lease. (¶ 34).

The complaint alleges that Chase as pledgee of the stock and mortgagee of the land was under an implied contractual equitable and fiduciary duty to plaintiff to act with reasonable care and in good faith in exercising its powers as pledgee and mortgagee (¶ 11) and that in liquidating plaintiff's loan Chase breached this duty by selling the collateral at a grossly inadequate price.

■ In its opinion of March 31, 1980, this Court held that the judgment in Georgia was res judicata and a bar to plaintiff relitigating all aspects of the claim alleged against Holiday Inns either individually or jointly with Chase. The Court recognizes that the decision was right insofar as it related to the allegation that the arrangement between plaintiff and the Jamaican government was frustrated when the arrangement was terminated in August 1976. The rehearing granted by the Court was limited to the conspiracy alleged in paragraph 20 but only insofar as it related to the sale by Chase of the stock of Rose Hall (H.I.) and the three thousand acres of land. After hearing reargument the Court is satisfied that for the reasons hereafter stated it erred in holding that this aspect of the conspiracy was res judicata under the Georgia judgment.

Holiday Inns argues that as to it the conspiracy issue pleaded in Delaware was res judicata as it relates to the sale by Chase of the stock and land because the cause of action in Georgia was identical to that here. In support of its argument, it says:

> The Complaint in the Georgia Suit alleged, as here, that Rose Hall, Ltd. owned the 3600 acres and the Rose Hall (H.I.) stock (R. 13), that Holiday Inns engaged in a course of conduct "with the willful

intent of injuring Rose Hall, (H.I.) and Plaintiff [Rose Hall, Ltd.] in the use and enjoyment of their respective properties. . . ." (R. 18), that "Chase has begun negotiating with the Jamaican Government to sell the stock of Rose Hall (H.I.) and the 3600 acres to the Jamaican Government. . . ." (R. 21) and that Rose Hall, Ltd. was damaged as a direct result of Holiday Inns' "tortious interference with Plaintiff's enjoyment of its property. . . ." (R. 21).[1]

These allegations in the Georgia complaint scarcely make the cause of action in Georgia identical to that now before the Court. It is apparent that Holiday Inns has misconceived the issue and the scope of the decision in Georgia.

These can best be determined from the opinion of the Court of Appeals. *Rose Hall, Ltd. v. Holiday Inns, Inc.*, 146 Ga.App. 709, 247 S.E.2d 173 (1978). It states that the suit in Georgia was brought by plaintiff to recover for the financial loss which it sustained because Holiday Inns had tortiously interfered with the consummation of an arrangement which plaintiff had with the Jamaican government to buy from Rose Hall (H.I.) the Hotel Asset. The Court held that although plaintiff indirectly sustained a loss as a result of the action of Holiday Inns, it was Rose Hall (H.I.) which sustained the direct loss and that plaintiff could not legally or properly bring a direct action for tortious interference in the contract negotiations between Rose Hall (H.I.) and the Jamaican agency. The Court stated that plaintiff had not pleaded a derivative action and that the facts would not support one. For this reason the Court of Appeals affirmed the trial court's judgment granting the motion of Holiday Inns for summary judgment and/or to dismiss the complaint. Holiday Inns' interference with the contract negotiations with the Jamaican government was all that was involved in the Georgia action and nothing more.

Apart from the Court of Appeals' decision a comparison between the Delaware and Georgia complaints emphasizes that no conspiracy claim was made by plaintiff in Georgia comparable to that in Delaware insofar as it involved a sale by Chase of the stock of Rose Hall (H.I.) and land owned by plaintiff. The complaint in Georgia, unlike that in Delaware, fails to allege a conspiracy in haec verba nor does it allege facts supporting the existence of one. Unlike in Delaware, Chase was not named as a defendant in Georgia.[2] The actual damages claimed in Georgia were $6,750,000. In the context of the complaint these obviously related to the interference by Holiday Inns with plaintiff's arrangement with the Jamaican government. In Delaware the $72,-000,000 damages claimed relate primarily to the violation by Chase of its fiduciary duty in selling the collateral at an inadequate price. The fiduciary duty which Chase owed to plaintiff as pledgee and mortgagee of plaintiff's collateral was not referred to in the Georgia action. Nor was the sale of the collateral which occurred in December 1977, and of course it could not have been since the decision of the Georgia trial court was rendered on October 19, 1977.

The argument of Holiday Inns that the actions in Georgia and Delaware are identical ignores the manner in which the Court of Appeals defined and decided the issue before it as well as the above distinctions between the Delaware and Georgia actions. This Court finds unacceptable Holiday Inns' argument that the issues decided in Georgia were identical to those now before this Court.

Holiday Inns argues alternatively that even if no conspiracy as it related to the sale of plaintiff's collateral by Chase was actually in issue in Georgia, nevertheless it might have been put in issue and consequently the claim in Delaware is barred by the Georgia judgment under the Georgia res judicata statute. Ga.Code Ann. § 110-

---

1. Brief of the defendant Holiday Inns in opposition to the motion of plaintiff Rose Hall, Ltd. for reargument and for leave to amend its complaint, pp. 2–3.

2. Legally this was irrelevant. See opinion dated March 31, 1980, at 1147.

501. It argues that the Georgia complaint, although not expressly alleging the conspiracy, did so implicitly, and that the alleged object of the conspiracy was to injure the plaintiff by depriving it of the use and enjoyment of its property. (¶¶ 21, 28, 33). Holiday Inns claims that this is also the object of the conspiracy alleged in Delaware. There is a basic difference, however, between the cause of action in Delaware and that in Georgia. The complaint in Georgia fails to allege that as a result of the conspiracy plaintiff was in fact deprived of the use and enjoyment of its property whereas the Delaware complaint alleges that plaintiff actually lost its property when Chase sold its collateral in December 1977. ⸱ This sale was neither alleged nor could have been alleged in Georgia inasmuch as the trial court had decided the case before the sale took place.

 The failure of Holiday Inns to recognize this basic distinction between the two cases results from its failure to understand the nature of a civil conspiracy as distinct from a criminal one. A civil conspiracy cannot be established by proof of a conspiracy alone. The existence of a conspiracy designed to injure a plaintiff provides him with no cause of action. A conspirator's liability must be based upon overt acts done pursuant to the conspiracy. Not until a plaintiff is injured by an overt act does a cause of action arise. In *Cook v. Robinson*, 216 Ga. 328, 116 S.E.2d 742 (Ga. 1960), the Georgia Supreme Court said at p. 745:

> The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.

*See Jones v. Spindel*, 113 Ga.App. 191, 146 S.E.2d 615, 616 (1966).

The fact that Chase did not sell plaintiff's stock until December 1977, after the decision by the trial court in Georgia, deprives the Georgia judgment from having a preclusive effect on the Delaware action. Tentative Draft No. 5 of the Restatement of the Law Second, Judgments, Comment (f) to Section 61, deals with the significance of a change of circumstances. It states:

Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be the basis of a second action not precluded by the first.

Georgia law is to the same effect. Although the facts in *Durham v. Crawford*, 196 Ga. 381, 16 S.E.2d 778 (1943) are not analogous to those here involved the Court stated the general law with respect to res judicata as follows: (26 S.E.2d p. 783)

> [T]he general rule [is] that a former judgment binds only as to the facts in issue and events existing at the time of such judgment, and does not prevent a reexamination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights and relations of the litigants . . . .

In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1954), the Court, in speaking upon the res judicata effect of a 1943 judgment upon a later action, said at p. 328, 75 S.Ct. at p. 868:

> While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case. . . .
> Under these circumstances, whether the defendants' conduct be regarded as a series of individual torts or as one continuing tort, the 1943 judgment does not constitute a bar to the instant suit.

The foregoing principles are not rendered less applicable because the Georgia complaint alleged that after the failure of the proposed sale by Rose Hall (H.I.) of the Hotel Asset to the Jamaican government in August 1976, Chase began negotiating with the government to sell the stock of Rose Hall (H.I.) and the three thousand acres of land. (¶ 32). Nor does the fact that the Georgia record reveals that on September

14, 1976, Chase offered to sell those assets to the Jamaican government on virtually the same terms as they were sold in December 1977. (RX 470).

Holiday Inns' argument that on September 14, 1976, a cause of action arose in favor of plaintiff is based upon a fallacious premise that Chase's offer constituted a conversion of plaintiff's property. Before Chase sold the property it had legal possession of the property as pledgee and mortgagee and since plaintiff's obligation to Chase was in default Chase had a right to offer the property for sale. The injury which was done to plaintiff was not in offering the assets at a grossly inadequate price to the Jamaican government but the consummation of the sale in December 1977. Not until then did Chase violate its alleged fiduciary duty to plaintiff as a result of which plaintiff was injured.

When Chase made the offer to sell the collateral to the Jamaican government at a grossly inadequate price in September 1976, this constituted a threat by Chase to violate its alleged obligation to the plaintiff. At that time plaintiff quite properly brought an injunction suit in Jamaica to stop the sale. The injunction was denied and the sale was later consummated in December 1977. At that time the wrong which was one of the objects of the conspiracy occurred, not before. Any suit for damages prior to that time would have been premature and any judgment based on the prematurity of the action would not have precluded the present action in Delaware being brought. Restatement of the Law, Judgments, § 54.

Thus, for the foregoing reasons, Holiday Inns' motion for summary judgment will be granted, except insofar as it is directed to that aspect of the conspiracy alleged in paragraph 20 pertaining to the sale of the Rose Hall (H.I.) stock and the three thousand acres of land. Those portions of the Court's opinion of March 31, 1980, that are inconsistent with the reasons and conclusions expressed herein shall be deemed to be modified in accordance with this opinion.